**BUSEY et al. v. DISTRICT OF COLUMBIA.**

No. 7918.

United States Court of Appeals for the
District of Columbia.

Submitted Oct. 4, 1943.
Decided Nov. 8, 1943.

Mr. Hayden C. Covington, of Brooklyn, N. Y., submitted on the brief for appellant.

Messrs. Richmond B. Keech, Corporation Counsel, Vernon E. West, Principal Assistant Corporation Counsel, and Edward W. Thomas, Assistant Corporation Counsel, all of Washington, D. C., for appellee, submitted no brief.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

Appellants were convicted of selling copies of Consolation and Watch Tower, magazines published by Jehovah's Witnesses, on the streets of the District of Columbia without paying a license "tax" or fee and in other respects complying with the license law.[1] Each appellant was sentenced to a fine of $5, or one day in jail.

---

[1] D.C.Code, 1940, § 47–2336, 47 Stat. 557.

The appeal has been here before. When we decided it in April, 1942,[2] the majority of this court thought that decisions of the Supreme Court required us to hold the statute valid. In cases from other jurisdictions which it decided two months later, the Supreme Court not only confirmed that view but went beyond it, by upholding larger license taxes imposed merely for revenue purposes upon the sale of much the same literature in much smaller communities.[3] But the Chief Justice and three Associate Justices dissented in those cases, and upon a change in the Court's membership in February, 1943, it granted rehearings in them.[4] Though no member of the Court changed his position, the Court afterwards adopted the dissenting opinions which had previously been filed and reversed the state court judgments which had previously been affirmed.[5] The Court then granted certiorari in the present case,[6] heard argument, and remanded the case[7] to enable us to re-examine our rulings on the construction and validity of the statute in the light of the Court's recent Opelika and Murdock[8] decisions.

*Construction.* The District of Columbia license law provides: "No person shall sell any article of merchandise, or anything whatever, excepting newspapers sold at large and not from a fixed location, upon the public streets * * * without a license first having been obtained under this section."[9] It requires a licensee to wear a numbered badge and to pay for his license at the rate of $12 a year or $1 a month, with a minimum of $5. The cost of a license to each appellant would have been $5. A violator of the license law may be fined not more than $300 or imprisoned not more than 90 days.[10]

■ As we pointed out in our former opinion, the license law is a police or regulatory measure. Its aim is not to impose a "tax" for general revenue purposes but to provide a "fee * * * commensurate with the cost * * * of * * * inspection, supervision, or regulation."[11]

■ Appellants stood on a street-corner and, by signs which they carried, offered magazines to the public at five cents each. Each appellant handed a magazine to the prosecuting witness and collected five cents. When this case was here before, appellants' counsel conceded that appellants "did sell" these two magazines. We held that their acts were within the meaning of the statute even if inferences not required by the record were drawn in their favor, viz., that they were not engaged in a business or calling, that they acted from religious motives,[12] and that they neither derived nor sought a profit from their sales. For the reasons which we stated in our former opinion, we now reach the same conclusion on this point.

In Cox v. New Hampshire[13] the Supreme Court approved the determination of the state court that conduct of Jehovah's Witnesses which had the usual characteristics of a "parade or procession" was, despite its proselytizing purpose, within the meaning of a statute which imposed a license tax on parades and processions in order to meet the cost of policing them. The Court said: " 'It was a march in formation, and its advertising and informatory purpose did not make it otherwise. * * * It is enough that it proceeded in ordered and close file as a collective body of persons on the city streets.' "[14] As the incidents of a parade

---

[2] Busey v. District of Columbia, 75 U.S. App.D.C. 352, 129 F.2d 24.

[3] Bowden v. City of Fort Smith; Jobin v. State of Arizona; both decided with Jones v. City of Opelika, 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691, 141 A.L.R. 514.

[4] 318 U.S. 796, 797, 63 S.Ct. 658, 87 L. Ed. —.

[5] Jones v. City of Opelika (together with Bowden v. City of Fort Smith and Jobin v. State of Arizona), 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290. Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, was decided at the same time. Four Justices dissented in each case.

[6] 319 U.S. 735, 63 S.Ct. 1154, 87 L.Ed. —.

[7] 319 U.S. 579, 63 S.Ct. 1277, 87 L.Ed. 1598.

[8] Supra, Note 5.

[9] D.C.Code, 1940, § 47—2336.

[10] D.C.Code, 1940, §§ 47—2336, 47—2305, 47—2347.

[11] D.C.Code, 1940, § 47—2344.

[12] Statements of their present counsel that there was testimony that (1) they were "duly authorized representatives of the Watchtower Bible and Tract Society" and (2) each was "an ordained minister * * * and * * * one of Jehovah's witnesses" are erroneous.

[13] 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396.

[14] 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049, 133 A.L.R. 1396.

594

made a parade, we think the incidents of a sale make a sale within the meaning of a regulatory license law.

The Murdock opinion is more closely related to this question than the Opelika opinion. It does not call for a different answer. In the first place, Murdock involved a tax for general revenue purposes while the present case involves a fee for regulatory purposes. Second, the conduct of the Witnesses in that case and in this was different. There they engaged in house-to-house solicitation, including alleged "sales" of books and pamphlets. The Supreme Court said: "There was evidence that it was their practice in making these solicitations to request a 'contribution' of twenty-five cents each for the books and five cents each for the pamphlets * * *."[15] The present appellants, on the other hand, displayed printed signs which read "Five cents per copy." As we have said, on the former hearing their counsel admitted that they made sales. Finally, the Supreme Court did not hold or say that the Witnesses made no sales in the Murdock case. While the Court thought it "a distortion of the facts of record to describe their activities as the occupation of selling books and pamphlets,"[16] in that statement the word "occupation" appears to be critical. For the Court went on to speak of the "selling activities" of the defendants, as being incidental to the object of propagating their doctrines.

*Validity.* The validity of the District of Columbia statute in the light of the Opelika and Murdock decisions is a harder question than its construction. While Murdock and the two cases decided with Opelika involved house-to-house sales, Opelika itself involved street sales similar to those which appellants made. The Supreme Court held that sales for propaganda purposes could not be subjected to taxation for general revenue purposes. Such taxation, the Court held, violated the constitutional freedoms of speech, press, and religion. But the Court emphasized the fact that it was dealing with "a flat tax, more than a nominal fee to defray the expenses of a regulatory license." In his dissenting opinion in the first Opelika case, which has now been adopted by the Court, the Chief Justice pointed out that the ordinances "on their face purport to be an exercise of the municipality's taxing power. In none is there the slightest pretense by the taxing authority, or the slightest suggestion by the state court, that the 'fee' is to defray expenses of the licensing system. * * * The controversy has been one solely relating to the power to tax, and not the power to collect a 'fee' to support a licensing system * * *. This Court has often had occasion to point out that where the state may, as a regulatory measure, license activities which it is without constitutional authority to tax, it may charge a small or nominal fee sufficient to defray the expense of licensing * * *."[17] The Court used similar language in the Murdock case.[18]

Since the fee in the present case is intended merely to defray the expenses of licensing and regulation, the rulings, as distinguished from the argument, in Opelika and Murdock do not apply here. But the argument which we have just quoted and which we take as our guide implies that if a fee so intended is in fact more than adequate to defray those expenses, or is more than "small or nominal," its enforcement against street sellers of religious propaganda would violate the constitutional freedoms of speech, press, and religion.

The record does not show what the expenses of licensing and regulation are. We must therefore determine who had the burden of proving them. When state taxes

---

15 Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 107, 63 S.Ct. 870, 872, 87 L.Ed. 1292.

16 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292.

17 Jones v. Opelika, 316 U.S. 584, 604, 605, 62 S.Ct. 1231, 1242, 86 L.Ed. 1691, 141 A.L.R. 514; adopted by the Court, 319 U.S. 103, 104, 63 S.Ct. 890, 87 L.Ed. 1290.

18 "Nor is there involved here any question as to the validity of a registration system for colporteurs and other solicitors. * * * And the license tax * * * is not a nominal fee imposed as a regulatory

measure to defray the expenses of policing the activities in question. * * * The constitutional difference between such a regulatory measure and a tax on the exercise of a federal right has long been recognized. * * * Nor do we have here * * * state regulation of the streets to protect and insure the safety, comfort, or convenience of the public. * * * And the fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting those on the streets and at home against the abuses of solicitors." 319 U.S. 105, 110, 113, 114, 116, 63 S.Ct. 870, 873, 87 L.Ed. 1292.

on the use of highways by motor vehicles have been attacked as interferences with interstate commerce the Supreme Court has held, in accordance with the general principle that legislation is to be presumed constitutional until the contrary is shown, that the taxpayer has the burden of showing that the tax exceeds the expenses incurred by the taxing authority.[19]

It does not necessarily follow that the present appellants have the burden of proving that the license fees which the District of Columbia imposes on their sales exceed the expenses of licensing and regulation.

■ Freedoms of speech, press, and religion are entitled to a preferred constitutional position because they are "of the very essence of a scheme of ordered liberty." [20] They are essential not only to the persons or groups directly concerned but to the entire community. Our whole political and social system depends upon them. Any interference with them is not only an abuse but an obstacle to the correction of other abuses.[21] Because they are essential, the guarantees of free speech, press, and religion in the First Amendment, though not all constitutional guarantees, are within the "liberty" which is protected by the due process clause of the Fourteenth Amendment.[22] And in the recent flag salute case the Supreme Court said: "The right of a State to regulate, for example, a public utility may well include, so far as the due process test is concerned, power to impose all of the restrictions which a legislature may have a 'rational basis' for adopting. But freedoms of speech and of press,

of assembly, and of worship may not be infringed on such slender grounds."[23] The Supreme Court has specifically suggested that these freedoms may be entitled to special treatment in respect to the proof of facts on which the constitutionality of legislation depends. In sustaining a purely commercial regulation, the Court said: "The existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis * * *. There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten Amendments, which are deemed equally specific when held to be embraced within the Fourteenth."[24]

■ We think we may now hold that when legislation appears on its face to affect the use of speech, press, or religion, and when its validity depends upon the existence of facts which are not proved, their existence should not be presumed; at least when their existence is hardly more probable than improbable, and particularly when proof concerning them is more readily available to the government than to the citizen. The burden of proof in such a case should be upon those who deny that these freedoms are invaded. In many contexts it is both rational and con-

[19] Morf v. Bingaman, 298 U.S. 407, 56 S.Ct. 756, 80 L.Ed. 1245; Ingels v. Morf, 300 U.S. 290, 57 S.Ct. 439, 81 L.Ed. 653; Clark v. Paul Gray, Inc., 306 U.S. 583, 598, 59 S.Ct. 744, 83 L.Ed. 1001.

[20] Palko v. State of Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288.

[21] Civil liberties are at present relatively little threatened by governmental action, but in many communities the civil liberties of unpopular groups are greatly threatened by private terrorism. Legal recognition of these liberties tends to discourage this terrorism.

[22] Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352.

[23] The West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 1186, 87 L.Ed. 1628.

[24] United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 783,

82 L.Ed. 1234. The Court continued: "See Stromberg v. People of State of California, 283 U.S. 359, 369, 370, 51 S.Ct. 532, 535, 536, 75 L.Ed. 1117, 73 A.L.R. 1484; Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 * * *. It is unnecessary to consider now whether legislation which restricts those political processes which can ordinarily be expected to bring about repeal of undesirable legislation, is to be subjected to more exacting judicial scrutiny under the general prohibitions of the Fourteenth Amendment than are most other types of legislation. * * * On restraints upon the dissemination of information, see Near v. State of Minnesota ex rel. Olson, 283 U.S. 697, 713-714, 718-720, 722, 51 S.Ct. 625, 630, 632, 633, 75 L.Ed. 1357; Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660; Lovell v. City of Griffin, supra." 304 U.S. 144, 152, 153, 58 S.Ct. 778, 783, 82 L.Ed. 1234.

venient to presume "the existence of facts supporting the legislative judgment." But it would be neither rational nor convenient to presume that the uniform fee by which Congress sought to cover the cost of policing all sorts of street sales happens not to exceed the cost of policing the particular sort involved here.

The case comes to this. The argument in Opelika and Murdock implies that a regulatory license fee which exceeds the cost of policing sales of religious propaganda is a prohibited interference with the freedoms of speech, press, and religion. There is no evidence, and no clear probability, that the District of Columbia license fee does not exceed the cost of policing these sales. No presumption which lacks a probable basis in fact should be permitted to conceal an interference with essential freedoms. It follows that § 47—2336 of the license law appears on this record to be invalid as against the appellants, and their convictions should be reversed. We need not consider whether the fee which each of these appellants would have had to pay in order to obtain a license was "small or nominal."

Reversed.