**CHESTER BRANCH, NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE**

v.

**CITY OF CHESTER, Pennsylvania, James H. Gorbey, Mayor, and Joseph M. Bail, Chief of Police.**

**Civ. A. No. 38886.**

United States District Court
E. D. Pennsylvania.

April 26, 1966.

Jack B. Justice, Philadelphia, Pa., for plaintiff.

Philip A. McMunigal, Jr., Joseph F. Battle, Jr., Chester, Pa., for defendants.

LUONGO, *District Judge.*

This action was brought by the plaintiff under 28 U.S.C.A. § 1343, claiming deprivation of certain rights, privileges and immunities secured by the Constitution of the United States by a certain ordinance of the City of Chester. The matter came on for hearing on plaintiff's motion for preliminary injunction. By agreement, it was heard and is being disposed of as on final hearing for permanent injunction.

Upon pleadings and proof, I make the following

## FINDINGS OF FACT

1. Plaintiff is the Chester Branch, National Association for the Advancement of Colored People, an unincorporated association whose principal office is at 1709 West Third Street, Chester, Pennsylvania.

2. Defendants are the City of Chester, Pennsylvania, James H. Gorbey, Mayor of the City of Chester, and Joseph M. Bail, Chief of Police of the City of Chester.

3. Ordinance No. 82–1955 was enacted by the City Council of Chester, Pennsylvania, on December 22, 1955, and is still in effect.

4. Chester Ordinance No. 82–1955 provides, inter alia, that any person desiring to operate a sound truck on the streets of the City of Chester must first

(a) obtain a permit;

(b) pay a twenty-five dollar fee for each and every permit; and

(c) produce a certificate from an engineer that the sounds from the amplifying device cannot be heard at a distance greater than one hundred feet from it.

5. Permits are issued by the City Clerk upon presentation by the applicant of the certificate and payment of the fee set forth in Finding No. 4 without regard to the subject matter of the message to be delivered.

6. Plaintiff, through its officers, applied for and received permits on at least three occasions to operate a sound truck on the streets of the City of Chester to publicize voter registration campaigns.

7. Plaintiff would likely have used sound trucks more often than it did had the cost of the permits been less.

8. Plaintiff intends to use sound trucks in the future to publicize voter registration campaigns. The frequency of such future use of sound trucks will be effected, in part, by the cost of the permits.

9. Defendants have produced no evidence as to the relationship, or as to the reasonableness of the relationship, if any, between the twenty-five dollar fee imposed by Chester Ordinance No. 82–1955 and the cost of enforcing said ordinance.

## DISCUSSION

Contending that Ordinance No. 82–1955[1] of the City of Chester, Pennsylvania, regulating the use of sound amplifying equipment in streets and in public places violates the Constitution of the United States, plaintiff, National Association for the Advancement of Colored People, filed a complaint seeking to enjoin its enforcement.

The ordinance in question provides, in pertinent part, as follows:

"Section 3. No person shall operate a sound truck or loud speaker on the streets or public places of the City of Chester without first obtaining a permit therefor from the Council of the City of Chester. Such permit shall be for a period of one day only. Such permit shall not be transferable from person to person or from sound truck to sound truck and may not be extended as to the date it shall be used, nor shall any permit for the operation of such sound truck be issued for use earlier than 8 o'clock A.M. or later than 9 o'clock P.M. * * * Every application for a permit shall be accompanied by a permit fee of Twenty-five dollors [sic] ($25.00).

"The application for such permit shall be filed in duplicate with the Clerk of City Council, the permit issued shall be limited in accordance with the information contained in such application and shall set forth the following:

\* \* \* \* \* \*

"i. A certificate from an engineer that such amplifying machine is so equipped and regulated by decibels, that the sound coming from such machine cannot be audibly heard at a distance greater than one hundred feet (100′) from the sound truck or amplifying machine."

Plaintiff challenges the ordinance on three separate grounds. First, that it is unconstitutional on its face, since it establishes a prior restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against state action; second, that the twenty-five dollar fee is unreasonable; and third, that the ordinance imposes an unreasonable restriction on the volume-producing capacity of sound amplifying equipment.

### I. *Doctrine of Prior Restraint.*

Ever since the Supreme Court wove into the constitutional fabric the doctrine of prior restraint,[2] it has become increasingly difficult for legislative bodies to condition the exercise of First Amend-

---

1. The ordinance was originally enacted in 1950 as No. 44–1950. Under attack here is the amended version of that ordinance.

2. Near v. State of Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

ment rights upon some prior act. In Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938), the Court struck down a local ordinance prohibiting the distribution of circulars or other literature without first obtaining written permission fom a city official. Several years later, in Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945), the Court held that a registration requirement could not be imposed as a condition precedent to addressing a meeting for the purpose of encouraging labor to organize. And just recently, in Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed. 398 (1965), the Court invalidated an Act of Congress requiring addresses of certain types of mail to affirmatively indicate their desire to receive it.

■ The cases cited, and others not mentioned, but similar in principle,[3] all take as a basic premise the proposition that

"* * * the First Amendment forbids the Federal Government [from imposing] any system of prior restraint, with certain limited exceptions. in any area of expression that is within the boundaries of that Amendment. By incorporating the First Amendment in the Fourteenth Amendment, the same limitations are applicable to the states." Emerson, The Doctrine of Prior Restraint, 20 LAW & CONTEMP. PROB., 648 (1955). See Saia v. People of State of New York, 334 U.S. 558, 559–560, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948).

Plaintiff seeks to apply the doctrine of prior restraint here. Briefly, its position is that it ought not to be required to obtain a permit *prior* to operating a sound truck in the City of Chester, and that for the City to require such a permit operates, *per se,* as an invalid prior restraint on plaintiff's right of free speech. Plaintiff goes too far.

In Saia v. People of State of New York, supra, the Supreme Court had occasion to consider the permissible scope of a sound truck ordinance. At issue in *Saia* was an ordinance of the City of Lockport, New York, which banned all sound amplying devices unless permission to use them was first obtained from the local Chief of Police. The Court held the ordinance unconstitutional on its face as a prior restraint on the right of free speech in violation of the First Amendment to the Constitution. The Court did not, however, foreclose the possibility that a properly drafted ordinance would pass constitutional muster. Indeed, the implication was that it would. At issue in *Saia* was not so much the prior restraint as the unfettered discretion vested by the Lockport ordinance in the Chief of Police. As the Court explained:

"[t]o use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. * * * The right to be heard is placed in the uncontrolled discretion of the Chief of Police. * * * A more effective previous restraint is difficult to imagine." Id. at 560–561, 68 S.Ct. at 1149.

The ordinance under attack in the instant case has none of the above infirmities. On the contrary, it seems to have been drawn with *Saia* in mind. The number of hours during which a sound truck may be operated is set forth, an attempt is made to regulate the volume of sound to which amplifying devices must be adjusted and, most important, the issuance of the required permit itself does not, in any way, depend upon any administrative discretion.[4] Cf. Cantwell v. State of Connecticut, 310 U.S. 296, 60

---

3. See, e. g. Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed. 649 (1965); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

4. In Chester, it is the City Clerk who is in charge of issuing permits to operate sound trucks. The ordinance makes it clear that his function is purely ministerial.

S.Ct. 900, 84 L.Ed. 1213 (1940). It would seem apparent, therefore, that insofar as the doctrine of prior restraint is concerned, the Chester ordinance falls within the permissible limits implied by the *Saia* decision. See Cox v. State of Louisiana, 379 U.S. 536, 553–558, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

This view is reinforced by a subsequent decision of the Supreme Court, Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). In *Kovacs,* the Court upheld an ordinance of the City of Trenton, New Jersey, which made illegal the operation of " * * * any device known as a sound truck, * * * which emits therefrom loud and raucus noises * * *." Trenton City Ordinance No. 430.[5] Although the Court in *Kovacs* did not have before it a permit requirement such as the one it struck down in Saia v. People of State of New York, supra, the two decisions must be considered together since they both concerned sound truck ordinances and were decided within eight months of one another. At least two essential propositions emerge:

> "The first of these, implicit in Saia, recognizes that the use of a sound truck as an effective means of human communication falls within the constitutional guarantee of freedom of speech. The second position, intimated in Saia and made explicit in Kovacs, specifies that this means of communication may be controlled by state and

local governments to 'prohibit acts or things reasonably thought to bring evil or harm to its people * * * [and that] [t]he police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community.'" Wollam v. City of Palm Springs, 59 Cal.2d 276, 29 Cal. Rptr. 1, 5, 379 P.2d 481, 485 (1963), quoting in part from Kovacs v. Cooper, supra, 336 U.S. p. 83, 69 S.Ct. 448.

The Chester ordinance exemplifies both propositions. First, it interferes very little, if at all, with plaintiff's right of free speech since the issuance of the disputed permits is based on clear, non-discriminatory and non-discretionary standards beyond the control of any local official. Cf. Lovell v. Griffin, supra; Saia v. People of State of New York, supra; Cantwell v. State of Connecticut, supra.[6] Second, it reflects the legitimate concern of a municipal body for the peace and tranquility of its community. Kovacs v. Cooper, supra; Wollam v. City of Palm Springs, supra. Accordingly, I cannot say that Ordinance No. 82–1955 is an invalid prior restraint. See 62 HARV.L.REV. 1228 (1949).

II. *Reasonableness of Fee.*

Plaintiff, assuming arguendo that the Chester ordinance is not an invalid prior restraint, contends next that the twenty-five dollar fee charged for each sound truck permit is unreasonable and there-

---

5. It is not at all clear that a majority of the Justices felt bound by this interpretation of the ordinance. Indeed the contrary appears to be true. "[A] majority here agree * * * that the issue presented is whether a state (here a municipality) may forbid all use of sound trucks or amplifying devices in public streets, without reference to whether 'loud and raucous noises' are emitted. Only a minority take the view that the Trenton ordinance merely forbids using amplifying instruments emitting loud and raucous noises." Kovacs v. Cooper, supra, p. 104, 69 S.Ct. p. 462 (dissenting opinion of Mr. Justice Rutledge). The internal conflict among the members of the Court on this issue is of no concern here.

6. Thomas v. Collins, supra, also relied upon by plaintiff, is admittedly a closer case. However, it, too, is distinguishable since in Thomas no amplifying device was involved and, more important, the speech there was intended for a limited group of people, all of whom were to some degree interested in what the speaker had to say. Here, however, by virtue of the amplifying device plaintiff could direct its message without "limit" as to audience or geography. In view of that contingency the City had every right to take some precautionary measures to regulate the conduct of plaintiff and others in order to secure the peace and tranquility of the community. See Cox v. State of Louisiana, supra, 379 U.S. pp. 553–558, 85 S.Ct. 453.

fore infringes upon the exercise of its constitutional right of free speech.

At the hearing before me, plaintiff, through its President, asserted its desire and intention to use sound trucks to encourage voter registration in certain areas of Chester. It used the trucks on three occasions during a recent campaign. Plaintiff contended that the twenty-five dollar fee was so burdensome that its operations in that campaign were seriously curtailed.[7]

■■ In view of Saia v. People of State of New York, supra, and Kovacs v. Cooper, supra, there is little doubt that the use of sound trucks for non-commercial purposes is within the ambit of First Amendment protection. Thus, if the disputed twenty-five dollar permit fee is to be sustained at all it must be on the ground that it bears a reasonable relationship to the cost of enforcing the ordinance in question, since a "flat tax" on the exercise of a right secured by the First Amendment is prohibited. Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Follett v. Town of McCormick, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). See Cox v. State of New Hampshire, 312 U.S. 569, 576–577, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

■ Defendants do not question these principles. Rather, they assert that the ordinance under attack here fully complies with them in that the fee charged under the ordinance *does* bear a reasonable relationship to the cost of enforcing it, and further that it is plaintiff's obligation to prove the contrary since " * * * [a] municipal ordinance is presumptively valid" and no provision thereof " * * * may be condemned as an improper exercise of the police power if any rational ground exists for its enactment." Defendants' Brief, p. 1. Were I concerned with a mere commercial regulation, I would agree with defendants since

" * * * regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938).

But the Chester ordinance as it operates under the facts of the instant case is not a mere restriction on commercialism; First Amendment rights of the highest order are involved and they " * * * may not be infringed on such slender grounds." West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 639, 63 S.Ct. 1178, 1186, 87 L.Ed. 1628 (1943). Where, as here, a municipal ordinance imposes a fee which threatens to interfere with a right guaranteed by the First Amendment, the burden of proving the reasonableness of that fee rests with those seeking to enforce it. Thus, it was held in Busey v. District of Columbia, 138 F.2d 592 (D.C.Cir.1943),

" * * * when legislation appears on its face to affect the use of speech, press, or religion, and when its validity depends upon the existence of facts which are not proved, their existence should not be presumed; at least when their existence is hardly more probable than improbable, and particularly when proof concerning them is more readily available to the government than to the citizen. *The burden of proof in such a case should be upon those who deny that these freedoms are invaded.*" Id. at 595 (Emphasis supplied.)

In *Busey*, the Court of Appeals had before it the convictions of certain of Jehovah's Witnesses who had sold religious literature on the streets of the District of Columbia without having first obtained a permit under an ordinance im-

posing a fee of one dollar per month or twelve dollars per year for engaging in such activities. The government made no attempt to relate the fees charged under the ordinance to the actual cost of enforcing and maintaining the licensing and regulation system. Thereupon, the court, after noting that it fell to the government to establish such a relationship, concluded:

"The case comes to this. The argument in * * * Murdock [Murdock v. Pennsylvania, supra] implies that a regulatory license fee which exceeds the cost of policing sales of religious propaganda is a prohibited interference with the freedoms of speech, press, and religion. There is no evidence, and no clear probability, that the District of Columbia license fee does not exceed the cost of policing these sales. No presumption which lacks a probable basis in fact should be permitted to conceal an interference with essential freedoms." Id. at 596.

The instant case clearly concerns a charge of interference with an essential freedom, the freedom of speech. Notwithstanding that a license fee reasonably calculated to defray the cost of enforcing such an ordinance would be sustained, the defendants, despite repeated invitations from the court to do so, offered no evidence upon which such a finding of reasonableness might be based. They seek to excuse their failure, or justify their refusal, to produce such evidence on the ground that the reasonableness of the fee has been determined by the highest court of Pennsylvania (Commonwealth ex rel. Hines v. Winfree, 408 Pa. 128, 182 A.2d 698 (1962)) as a mat-

ter of interpretation of state legislation and is, therefore, binding upon us.

Unquestionably, in matters involving interpretation of state legislation by the highest court of that state,

" * * * that construction must be accepted by the courts of the United States, and be regarded by them as a part of the [ordinance] when they are called upon to determine whether it violates any right secured by the Federal Constitution." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 73, 31 S.Ct. 337, 338, 55 L.Ed. 369 (1911); Georgia Ry. & Elec. Co. v. City of Decatur, 295 U.S. 165, 170, 55 S.Ct. 701, 79 L.Ed. 1365 (1935).

That doctrine, however, is not applicable here, for in *Hines* the Pennsylvania Supreme Court had before it for review evidence as to the manner in which the ordinance was enforced at a particular point in time (1959), together with evidence of the cost of those methods of enforcement.[8] The Pennsylvania Supreme Court ruled simply that it could not disagree on that record with the trial court's finding that there was a relationship between the amount of the fee and the cost of what was done in 1959 to enforce the ordinance. Nothing in the *Hines* opinion suggests that the Court was construing the ordinance for all time and for all circumstances. Indeed, the following language in *Hines* refutes that conclusion and emphasizes the narrowness of its holding:

"The findings of fact of a trial court, approved by the court en banc, unless arbitrarily made or manifestly erroneous or improper, are binding upon us unless such findings lack sufficient evi-

---

8. The Supreme Court of Pennsylvania considered verbatim the facts set forth in the opinion of the lower court. Briefly, those facts established that when sound truck permits were issued it was necessary to alert all police cars in all districts to supervise the operations of the sound trucks; that all policemen supervising sound trucks were forced to leave their regular posts; that two policemen in a patrol car had to remain with the sound truck at all times; that additional time had to be spent by supervisory police personnel; that each patrolman earned two dollars per hour; that the sound truck ordinance required more time and effort to enforce than any other ordinance of the City of Chester; and that on the particular occasion there involved four regular police and additional auxiliary police were needed.

dentiary support. * * * We have carefully examined the instant record and from such examination we conclude that the court below did not act arbitrarily or commit error and there is sufficient evidence of record to support the findings of fact. Under such circumstances we have no alternative other than to affirm the conclusion of the court below that the amount of this permit fee is reasonable." (Footnote and citations omitted.) Commonwealth ex rel. Hines v. Winfree, supra, 408 Pa. pp. 137–138, 182 A.2d p. 703.

■ If *Hines* constituted a construction at all, it was a construction limited to the specific facts which existed at that time. There is nothing in this silent record to establish any similarity between the conditions existing then and those existing now with respect to the methods of enforcement of the ordinance [9] and the cost of such enforcement.

■■ Since it was defendants' burden to establish that a reasonable relationship existed between the fee imposed by the ordinance and the cost of enforcing it, and since defendants have neither offered evidence on that point nor justified their refusal to do so, I have no alternative but to hold that Chester Ordinance No. 82–1955, insofar as it imposes a twenty-five dollar fee for each sound truck permit, is invalid for lack of proof of the reasonableness of the amount of the fee.

■ In passing, I will comment but briefly upon defendants' argument that the *Hines* case rests upon an independent and adequate state ground and, therefore, cannot be reviewed here. This is a principle applicable only in cases where there is review of decisions of the state courts by the Supreme Court of the United States. See Herb v. Pitcairn, 324 U.S. 117, 125–126, 65 S.Ct. 459, 89 L.Ed.

789 (1945); Henry v. State of Mississippi, 379 U.S. 443, 446–447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). That principle has no applicability here and obviously the *Hines* decision is not before me for review.

III. *Restriction on Volume.*

Plaintiff's final argument, that the ordinance imposes an unreasonable restriction on the volume of sound amplifying equipment, requires little comment since it appears that that part of the ordinance is a valid attempt to follow the suggestion of the Court in Saia v. People of State of New York, supra, that ordinances such as the instant one be narrowly " * * * drawn to regulate the hours or places of use of loudspeakers," [and] *"the volume of sound (the decibels) to which they must be adjusted."* Id. 334 U.S. at 560, 68 S.Ct. at 1149 (Emphasis supplied.)

■ While it may be true that the method of volume control adopted by this particular ordinance will lead to practical difficulties,[10] as plaintiff contends, there is no clear indication in this record that those difficulties have or will curtail plaintiff's activities to such a degree as to infringe upon rights guaranteed to it by the Constitution.

CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and of the subject matter in this suit for injunction, 28 U.S.C.A. § 1343.

2. Chester Ordinance No. 82–1955 is not an invalid prior restraint on plaintiff's constitutional rights.

3. Chester Ordinance No. 82–1955 does not impose an unreasonable restriction on the volume producing capacity of sound amplifying equipment.

4. In this case involving an alleged interference with the constitutional right of freedom of speech, the burden of es-

9. Defendants' reliance on Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762 (1941), is misplaced. All that case held was that it was constitutionally permissible for a city to condition the issuance of a parade permit upon the payment of a fee, the amount of which was to vary with the circumstances under which the permit issued. The court there had no occasion to reach the issue under discussion here.

10. See Note, 58 Yale L.J. 335 (1949).

tablishing that the twenty-five dollar permit fee imposed by Chester Ordinance No. 82–1955 bears a reasonable relationship to the cost of enforcing said ordinance is on defendants. Defendants have not met that burden.

5. Plaintiff is entitled to a decree enjoining enforcement of Ordinance No. 82–1955 of the City of Chester, Pennsylvania, insofar as said ordinance seeks to impose a fee of twenty-five dollars for each permit to operate a sound truck.