UNITED STATES LABOR PARTY, a/k/a
National Caucus of Labor Commit-
tees, et al., Plaintiffs,

v.

Michael J. CODD, Individually and as
Commissioner of the Police Department
of the City of New York, Defendant.

No. 74 C 1190.

United States District Court,
E. D. New York.

March 11, 1975.

Jay C. Carlisle, II, New York City, for plaintiffs.

W. Bernard Richland, Corp. Counsel of the City of New York, New York City by William P. DeWitt, Asst. Corp. Counsel, New York City, for defendant.

MEMORANDUM and ORDER

WEINSTEIN, District Judge:

Plaintiffs began this action in the summer of 1974 while gathering petitions in connection with state and national elections. They sought injunctions against the defendants to prevent

enforcement of that portion of section 435-6.0 of New York City's Administrative Code requiring a $5.00 fee for each permit to use a sound amplification device in addressing the public. The ordinance is set out in an appendix to this memorandum.

Preliminary evidentiary hearings were held within a few days after the action was commenced because of the imminence of petition filing deadlines. The evidence showed a high probability that the plaintiff was without sufficient funds to pay the fees required in its projected street election campaign. There was a substantial probability that the ordinance would be declared unconstitutional. With the detriment to plaintiffs' First Amendment rights substantial and the possible loss to the defendants slight, immediate relief was warranted. Accordingly, the court granted a preliminary injunction requiring the defendants to issue a specified number of permits to plaintiffs without prepayment of fees.

■ Plaintiffs will continue to require permits in future campaigns. In no sense can this case be deemed mooted by the 1974 elections. *Cf.* Cousins v. Wigoda, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

A full evidentiary hearing has now been held. For the reasons stated below the ordinance is found to be unconstitutional insofar as it requires payment of fees in political campaigns. A permanent injunction is granted.

### Facts

The evidence was overwhelming that the city's collection and issuance cost was over $10.00 per permit. At least six forms and a number of telephone calls are required. A detailed time and motion study might easily justify a cost to the city four or five times the fee charged.

There is little doubt that the city would save money were it to issue per-mits without fee at the precinct level, thus eliminating the need for extensive recordkeeping and processing. No overwhelming need, therefore, has been demonstrated for the City's charging a $5.00 fee. By contrast, there is a substantial detriment to small, poorly financed groups, or to individuals, wishing to conduct a continuing political campaign on city streets. The cost of paying fees each day over the course of a political campaign for a small number of amplification devices could easily run up to many hundreds of dollars. It might inhibit campaigning with a cheap, battery-operated, bullhorn, in a way the speaker considered effective.

### Law

■ On any current constitutional scale, the right to speak publicly on electoral matters is "fundamental," "preferred," and "implicit in the concept of ordered liberty," and subject only to the least practicable interference by government when it demonstrates the most "compelling state interest." *See, e. g.,* Grosjean v. American Press Co., 297 U. S. 233, 244, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936); Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937); Lovell v. City of Griffin, Ga., 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938); Hague v. Committee for Industrial Organization, 307 U.S. 496, 515-516, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939); Murdock v. Pennsylvania, 319 U.S. 105, 115, 63 S.Ct. 870, 876, 87 L.Ed. 1292 (1943); Kramer v. Union Free School District, 395 U.S. 621, 626, 630, 89 S.Ct. 1886, 1889, 1891, 23 L.Ed. 2d 583 (1969); Lubin v. Panish, 415 U. S. 709, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974). Since elections are involved, we deal here with a right "preservative of other basic civil and political rights." Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964); Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1074, 30 L. Ed. 220 (1885); Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L. Ed.2d 481 (1964) ("Other rights, even

the most basic, are illusory if the right to vote is undermined"). The city ordinance at issue here penetrates what Professor Henkin has characterized as "a zone of prima facie autonomy, of presumptive immunity from regulation." Henkin, Privacy and Autonomy, 74 Colum.L.Rev. 1410, 1425 (1974).

It is true that a line of cases has validated fees for processions on public streets and other exercises of First Amendment rights where the amount of the fee is reasonably related to the "expense incident to the administration of the act." Cox v. State of New Hampshire, 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941). *See, also,* Faria v. Violette, 32 F.Supp. 239 (D. Mass.1940) (validated $25 per year or $3.00 per day amplifier fee); Commonwealth ex rel. Hines v. Winfree, 408 Pa. 128, 182 A.2d 698 (1962) (validated $25.00 per day amplifier fee); Posner v. Cooper, 194 Misc. 640, 83 N.Y.S.2d 460 (S.Ct.1948) (validated $25.00 per day amplifier fee); *cf.* Moffett v. Killian, 360 F.Supp. 228, 231–232 (D.Conn.1973) (fee for legislative lobbying unconstitutional where fees in excess of administrative costs); NAACP v. Chester, 253 F.Supp. 707 (E.D.Pa.1966) (declaring a $25.00 fee invalid when the defendant submitted no evidence with respect to the cost of processing an application for a permit).

But, in a parallel line of cases with more current vitality, the Supreme Court has declared such fees unconstitutional as a "tax" on the exercise of a constitutional right. Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Follett v. Town of McCormick, S. C., 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). *See* T. I. Emerson, The System of Freedom of Expression, 310–311, 359 (1970). *Cf.* Wulp v. Corcoran, 454 F.2d 826 (1st Cir. 1972) (ordinance requiring the wearing of a badge and $.75 fee unconstitutional);

Strasser v. Doorley, 432 F.2d 567 (1st Cir. 1970) (ordinance requiring registering and wearing badge and $.50 fee unconstitutional); International Society for Krishna Consciousness v. Conlisk, 374 F.Supp. 1010 (N.D.Ill.1973) (peddler's license requirements invalid as applied to plaintiff); Gall v. Lawler, 322 F.Supp. 1223 (E.D.Wisc.1971) (ordinance requiring $5.00 peddler's fee and $100 transient merchant's fee invalid as applied to "underground" newspaper); Busey v. District of Columbia, 78 U.S. App.D.C. 189, 138 F.2d 592 (1943) ($1.-00 fee on literature invalid); City of Blue Island v. Kozul, 379 Ill. 511, 41 N. E.2d 515 (1942) (person "can not be compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution").

No person,

"can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege." Follett v. Town of McCormick, S. C., 321 U.S. at 578, 64 S.Ct. at 719.

It is improper to "dilute" a person's First Amendment rights:

"To introduce wealth or payment of a fee as a measure of a voter's qualifications is to introduce a capricious or irrelevant factor. The degree of the discrimination is irrelevant." Harper v. Virginia State Board of Elections, 383 U.S. at 668, 86 S.Ct. at 1082.

Particularly where a minority political party's rights are involved, the Supreme Court has recognized that what might be a relatively small fee by major party standards may cut off access to the electoral process and is, therefore, unconstitutional. *See* Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *cf.* Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v.

United States, 354 U.S. 476, 484, 77 S. Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957); *see also* Abrams v. United States, 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173 (1919) (Holmes, J., dissenting); Stromberg v. California, 283 U.S. 359, 369, 51 S.Ct. 532, 536, 75 L.Ed. 1117 (1931).

Historically, third parties have performed an important function in the marketplace of political ideas. As Professor Hesseltine notes:

"Perhaps the major role that third parties have played has been that of promoting new government ideas and programs. Many reforms which were first offered by third parties were, in time and after they had received wide popular approval, accepted and put into operation by the major parties." William Hesseltine, Third Party Movements in the United States 100 (1962).

*See also* Sweezy v. New Hampshire, 354 U.S. 234, 250–51, 77 S.Ct. 1203, 1 L.Ed. 2d 1311 (1957); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

 The Constitution is our safeguard to an open political system. It prevents denial to individuals, as well as to minority and majority political groups, of the free exercise of those political and civil rights that make it possible for them to raise issues and support candidates. It preserves the opportunity for the rich diversity of public debate on which our democracy is founded, a diversity which is increasingly important as this nation is faced with growing centralized bureaucratic controls. Even seemingly minor limits on the extent of political debate such as the fees required in this ordinance must be subject to the strictest scrutiny.

Cases such as *Cox* must be limited to their facts. They do not apply to ordinances charging fees for permission to use sound amplifying equipment in political campaigns. *Cf*. Hull v. Petrillo, 439 F.2d 1184 (2d Cir. 1971).

 We need not consider whether an ordinance more narrowly drawn, scaling license fees to ability to pay, might be constitutional, for that kind of ordinance is not before us. Such an ordinance might provide infirmities of its own by requiring extensive impermissible inquiry into associations and sources of support. *Cf*. N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); Hull v. Petrillo, 439 F. 2d 1184 (2d Cir. 1971) ("ability to pay is not a legitimate criterion for the state to employ in determining who is to express his views on its streets and who is not.").

Nor need we consider whether the portions of the ordinance requiring a permit are valid since they are not attacked by plaintiffs. Section 3 of Local Law of 1948 No. 64, which enacted section 435–6.0, provides for separability. It reads as follows:

"3. Construction Clause.—If any part of this local law or the application thereof in any person or circumstances, shall for any reason be adjudged by a court of competent jurisdiction to be unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remainder of this local law or the application thereof to other persons and circumstances, but shall be confined in its operation to the section, subdivision, sentence or part of the local law and the persons and the circumstances directly involved in the controversy in which such judgment shall have been rendered. It is hereby declared to be the intent of the Council that this local law would have been adopted if such invalid section, provision, subdivision, sentence or part of the local law or application not been included."

Although other members of the New York community may be entitled to quietly worship and attend court or school without undue interference from the amplified exercise of First Amendment rights, they can be protected, as provided in the specific terms of the ordinance, without charging loudspeaker fees. N.Y.Admin.Code § 435–6.0(g). *Cf*. Saia v. New York, 334 U.S. 558, 68

S.Ct. 1148, 92 L.Ed. 1574 (1948); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); People v. Dominick, 68 Misc.2d 425, 326 N.Y.S.2d 466 (1971); F. Haiman, Speech v. Privacy: Is There a Right Not to Be Spoken To?, 67 Nw.U.L.Rev. 153 (1972); Note, Permissible Scope of Sound Truck Ordinances, 58 Yale L.J. 335 (1949). *Compare* Niemotko v. Maryland, 340 U.S. 268, 273, 71 S.Ct. 325, 328, 95 L.Ed. 267 (1951) (Frankfurter, J. concurring) (suggests limitations on speech such as time, place, or method are valid where the value of the social interests supporting the limitation overbalances the value of the First Amendment right being exercised), *with* Kovacs v. Cooper, 336 U.S. 77, 98, 69 S.Ct. 448, 459, 93 L.Ed. 513 (1949) (Black, J. dissenting, with Douglas and Rutledge, JJ.).

If a bureaucratic system is needed to protect the rights of the majority without inhibiting those of the minority, the question is who should pay for that bureaucracy. It is the majority that appears to wish the protection so that there is no unfairness in its paying the cost. Moreover, spread over the entire community, the cost per person is miniscule, whereas, if it were placed entirely upon those who have the urge to speak publicly in an amplified manner, the costs would be so prohibitive as to substantially inhibit many of them from exercising their rights. In the case before us we have the additional factor that the cost to the majority would actually be reduced if no fee were charged, since collecting the fee costs more than is collected.

### *Conclusion*

Whatever the test of validity of free speech limitations by the government, the balance against the fee here is so overwhelming as to require the court to declare its collection an unconstitutional clog on the exercise of free speech and the right to participate in free elections.

Plaintiffs are entitled to a permanent injunction against collection of fees required by New York City ordinance § 435–6.0.

So ordered.

### APPENDIX

### § 435–6.0—ADMINISTRATIVE CODE OF CITY OF NEW YORK

§ 435–6.0 Regulation of sound devices or apparatus.—a. Legislative declaration. It is hereby declared that the use or operation of any radio device or apparatus or any device or apparatus for the amplification of sounds from any radio, phonograph or other sound-making or sound-producing device, or any device or apparatus for the reproduction or amplification of the human voice or other sounds, in front of or outside of any building, place or premises, or in or through any window, doorway or opening of such building, place or premises, abutting or adjacent to a public street, park or place, or in or upon any vehicle operated, standing or being in or upon any public street, park or place, where the sounds therefrom may be heard upon any public street, park or place, or from any stand, platform or other structure, or from any airplane or other device used for flying, flying over the city, or on a boat or on the waters within the jurisdiction of the city, or anywhere on or in the public streets, parks or places, is detrimental to the health, welfare and safety of the inhabitants of the city, in that such use or operation diverts the attention of pedestrians and vehicle operators in the public streets, parks and places, thus increasing traffic hazards and causing injury to life and limb. It is hereby further declared that such use or operation disturbs the public peace and comfort and the peaceful enjoyment by the people of their rights to use the public streets, parks and places for street, park and other public purposes and disturbs the peace, quiet and comfort of the neighboring inhabitants. Therefore, it is hereby declared as a

matter of legislative determination that the prohibition of such use or operation for commercial or business advertising purposes and the proper regulation of such use and operation for all other purposes is essential to protect the health, welfare and safety of the inhabitants of the city, to secure the health, safety, comfort, convenience, and peaceful enjoyment by the people of their rights to, use the public streets, parks and places for street, park and other public purposes and to secure the peace, quiet and comfort of the city's inhabitants. It is hereby further declared as a matter of legislative determination that the expense of supervising and regulating the use and operation of such sound devices and apparatus for purposes other than commercial and business advertising purposes should be borne by the persons using or operating such devices and apparatus and that the requirement of a nominal fee for the issuance of a permit for such use and operation as hereinafter prescribed is intended to defray the expenses of regulating such use or operation for the health, welfare and safety of all the people.

b. Definitions. As used in this section:

1. The term "sound device or apparatus" shall mean any radio device or apparatus, or any device or apparatus for the amplification of any sounds from any radio, phonograph, or other sound-making or sound-producing device, or any device or apparatus for the reproduction or amplification of the human voice or other sounds;

2. The phrase "to use or operate any sound device or apparatus in, on, near or adjacent to any public street, park or place," shall mean to use or operate or cause to be used or operated any sound device or apparatus in front or outside of any building, place or premises, or in or through any window, doorway or opening of such building, place or premises, abutting on or adjacent to a public street, park or place, or in or upon any vehicle operated, standing or being in or on any public street, park or place, where the sounds therefrom may be heard upon any public street, park or place, or from any stand, platform or other structure, or from any other airplane or other device used for flying, flying over the city, or on a boat or on the waters within the jurisdiction of the city, or anywhere on the public streets, parks or places.

c. Use and operation of the sound devices and apparatus for commercial and business advertising purposes. It shall be unlawful for any person to use or operate any sound device or apparatus in, on, near or adjacent to any public street, park or place, for commercial and business advertising purpose.

d. Use and operation of sound devices and apparatus for other than commercial and business advertising purposes; permit required. It shall be unlawful for any person to use or operate any sound device or apparatus, in, on, near or adjacent to any public street, park or place, unless he shall have first obtained a permit to be issued by the commissioner in the manner hereinafter prescribed and unless he shall comply with the provisions of this section and the terms and conditions prescribed in such permit.

e. Applications.—Each applicant for a permit to use or operate a sound device or apparatus in, on, near or adjacent to any public street, park or place shall file a written application with the commissioner, at the police precinct covering the area in which such sound device or apparatus is to be used or operated, at least five days prior to the date upon which such sound device or apparatus is to be used or operated. Such application shall describe the specific location in which such sound device or apparatus is proposed to be used or operated, the day and the hour or hours during which it is proposed to be used or operated, the volume of sound which is proposed to be used measured by decibels or by any other efficient method of measuring sound, and such other pertinent

information as the commissioner may deem necessary to enable him to carry out the provisions of this section.

f. Issuance of permit; terms.—The commissioner shall not deny a permit for any specific time, location or use, to any applicant who complies with the provisions of this section, except for one or more of the reasons specified in subdivision g hereof or for non-payment of the fee prescribed in subdivision h hereof, or to prevent over-lapping in the granting of permits. Each permit issued pursuant to this section shall describe the specific location in which such sound device or apparatus may be used or operated thereunder, the exact period of time for which such apparatus or device may be operated in such location, the maximum volume of sound which may be employed in such use or operation and such other terms and conditions as may be necessary, for the purpose of securing the health, safety, comfort, convenience and peaceful enjoyment by the people of their right to use the public streets, parks or places for street, park or other public purposes, protecting the health, welfare and safety of the inhabitants of the city, and securing the peace, quiet and comfort of the neighboring inhabitants.

g. Special restrictions.—The commissioner shall not issue any permit for the use of a sound device or apparatus:

1. In any location within five hundred feet of a school, courthouse or church, during the hours of school, court or worship, respectively, or within five hundred feet of any hospital or similar institution;

2. In any location where the commissioner, upon investigation, shall determine that the conditions of vehicular or pedestrian traffic or both are such that the use of such a device or apparatus will constitute a threat to the safety of pedestrians or vehicular operators;

3. In any location where the commissioner, upon investigation, shall determine that conditions of overcrowding or of street repair or other physical conditions are such that the use of a sound device or apparatus will deprive the public of the right to the safe, comfortable, convenient and peaceful enjoyment of any public street, park or place for street, park or other public purposes, or will constitute a threat to the safety of pedestrians or vehicle operators;

4. In or on any vehicle or other device while it is in transit; or

5. Between the hours of ten p. m. and nine a. m.

h. Fees—Each applicant for a permit issued under the provisions of this section shall pay a fee of five dollars for the use of each sound device or apparatus for each day, provided, however, that permits for the use of such sound devices or apparatus shall be issued to any bureau, commission, board or department of the United States government, the state of New York, and the city of New York, without fee.

i. The provisions of this section shall not apply to the use or operation of any sound device or apparatus by any church or synagogue on or within its own premises, in connection with the religious rites or ceremonies of such church or synagogue.

j. Violations—Any person who shall violate any provision of this section, upon conviction thereof, shall be punished by a fine of not more than twenty-five dollars or imprisonment for thirty days, or both.

k. Rules and regulations—The commissioner shall have the power to make such rules and regulations as may be necessary to carry out the provisions of this section.

(As amended by L.L.1939, No. 172, November 20; as renumbered by L.L. 1942, No. 50, October 29; and as amended by L.L.1948, No. 64, October 1.)