(No. 26471.—

THE CITY OF BLUE ISLAND, Appellee, *vs.* ANNA KOZUL, Appellant.

*Opinion filed March 17, 1942—Rehearing denied May 13, 1942.*

512

LANDON L. CHAPMAN, (JOSEPH F. RUTHERFORD, and HAYDEN C. COVINGTON, of counsel,) for appellant.

PAUL R. SCHREIBER, (THOMAS J. COURTNEY, State's Attorney, RUSSELL C. MORSE, and JOHN T. GALLAGHER, of counsel,) for appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

The defendant, Anna Kozul, was convicted in the court of a police magistrate of a violation of ordinance No. 1491 of the city of Blue Island. On an appeal to the criminal court of Cook county in a trial *de novo,* she was found guilty and a fine of $25 was imposed. Her appeal comes direct to this court on the certificate of the trial judge that the validity of a municipal ordinance is involved and that in his opinion the public interest requires that an appeal be taken directly to the Supreme Court.

The parts of the ordinance material to the questions here involved are as follows: "Section 1. Definition of Peddler—Peddlers required to be Licensed. That every person, firm or corporation who shall sell or offer for sale, barter or exchange at retail any goods, wares or merchandise of any kind whatsoever, by traveling from place to place in, along and upon any of the streets of the city of Blue Island * * * whether to regular customers or not, shall be deemed a peddler and shall before engaging in said business, obtain a license as a peddler as hereinafter provided." Section 3 provides that a written application for license shall be made to the city clerk, and section 4 requires that pedestrian peddlers pay a fee of $25 per year or $4 per day.

The facts were all stipulated. Defendant was a member of Jehovah's Witnesses and by virtue of her membership was an ordained minister of that sect. At the time of the commission of the acts complained of, she carried an identification card showing such fact. On a date alleged she was on a certain street in the city of Blue Island carrying a canvas bag with the words "The Watch Tower and Consolation, 5c per copy" appearing on one side, and on the other appeared the words "The Watch Tower explains the Theocratic Government, 5c per copy." A fifteen-year-old boy accompanied her and presumably under her direction carried a sign about eighteen by twenty inches, upon which appeared the same words as those on the canvas bag. The defendant and the boy walked back and forth on the sidewalk and while so engaged the defendant spoke to persons on the street using such words as "Religion is a snare and a racket. Religion and Christianity are different. Religion will ruin the Nation. Christianity will save the people. Read 'The Watch Tower'; read the 'Consolation' 5c a copy." Defendant endeavored to sell as many copies of the magazines, *The Watch Tower* and *Consolation* at 5c per copy as possible, and it is stipulated that she did sell one copy of each for which she received ten cents. She

also gave the purchaser a copy of *Kingdom News*, for which she received no money. Persons who could not pay for the magazines were given copies without charge. It was stipulated that the appellant would, if called as a witness, testify that she distributed the literature as part of her form of worship, without financial gain or material profit to herself, and not as a means of livelihood and that her reason for not obtaining a license as required by the ordinance was because it was against her religious belief to ask man for permission to do God's work.

The magazines sold by the defendant would come within the terms "goods, wares and merchandise" used in the ordinance. *Village of South Holland* v. *Stein*, 373 Ill. 472.

Under the facts of this case, our view of the application of the law on the freedom of speech and press makes it unnecessary to consider any other constitutional question.

Section 4 of article 2 of the constitution of Illinois provides: "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty." The first amendment to the constitution of the United States provides: "Congress shall make no law * * * abridging the freedom of speech, or of the press." It has been frequently held that the freedom of speech and of the press secured by the first amendment against abridgement by the United States is similarly secured to all persons by the fourteenth amendment against abridgement by a State. *Gitlow* v. *New York*, 268 U. S. 652, 69 L. ed. 1138; *Whitney* v. *California*, 274 U. S. 357, 71 L. ed. 1095; *Near* v. *Minnesota*, 283 U. S. 697, 75 L. ed. 1357; *Stromberg* v. *California*, 283 U. S. 359, 75 L. ed. 1117; *Grosjean* v. *American Press Co.* 297 U. S. 233, 80 L. ed. 660; *De Jonge* v. *Oregon*, 299 U. S. 353, 81 L. ed. 278; *Herndon* v. *Lowary*, 301 U. S. 242, 81 L. ed. 1066; *Lovell* v. *City of Griffin*, 303 U. S. 444, 82 L. ed. 949; *Schneider* v. *Town of Irvington*, 308 U. S. 147, 84 L. ed. 155.

Recent pronouncements of the Supreme Court of the United States make it obvious that the ordinance here in question, as applied to the sale and distribution of the magazines and leaflets by the defendant is unconstitutional and a violation of the right of freedom of speech and of the press. *Lovell* v. *City of Griffin, supra; Schneider* v. *Town of Irvington, supra; Grosjean* v. *American Press Co. supra; Cantwell* v. *Connecticut,* 310 U. S. 296, 84 L. ed. 1213; *Hague* v. *C. I. O.* 307 U. S. 496, 83 L. ed. 1423.

In *Lovell* v. *City of Griffin, supra,* the ordinance of the city of Griffin prohibited the distribution, either by sale or by gift, of printed matter within the city without a written license from the city manager. Alma Lovell was a member of the Jehovah's Witnesses sect and was convicted of violating the ordinance by distributing pamphlets and magazines in the nature of religious tracts, such as are involved in this case, without having first obtained the written permission of the city manager. The United States Supreme Court reversed the conviction and held the ordinance void. Chief Justice Hughes, speaking for the court, said: "We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing.' And the liberty of the press became initially a right to publish 'without a license what formerly could be published only with one.' While this freedom from previous restraint upon publication can not be regarded as exhausting the guarantee of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provision. * * * Legislation of the type of the ordinance in question would restore the system of license and censorship in

its baldest form. The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. These indeed have been the historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion."

In *Schneider* v. *Town of Irvington, supra,* four cases were consolidated involving ordinances in cities of New Jersey, California, Wisconsin and Massachusetts. The Los Angeles, Milwaukee and Worcester ordinances prohibited the distribution of hand bills on streets or sidewalks or in parks, and the Supreme Court held that they were void because the purpose of keeping streets clean and of good appearance was insufficient to justify prohibiting a person lawfully on the street from distributing literature. The ordinance of the town of Irvington, New Jersey, provided that no one should canvass, solicit or distribute circulars or other matter or call from house to house without first reporting to and receiving a written permit from the chief of police. It required information to be given in the application as to the character of the solicitor and the nature of his project, and left it to the officer's discretion whether the permit might be granted, refused or recalled. Clara Schneider, a member of the Jehovah's Witnesses organization who was engaged in calling from house to house and endeavoring to make converts by means of magazines and pamphlets, was arrested and convicted. The Supreme Court reversed the conviction and held the ordinance to be void and said: "Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the constitution to those who wish to speak, write, print or circulate information or opinion. Municipal authorities, as trustees for the public, have the duty to keep

their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic; a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion."

The ordinance of the city of Blue Island, as applied to the defendant, can not be sustained as a revenue measure. The United States Supreme Court in *Grosjean* v. *American Press Co. supra,* reviews the history of the long struggle which took place in England between the government and the proponents of a free press. The methods anciently used to control the press were censorship, license and taxation. It is obvious that through license and taxation, as well as by censorship, freedom of speech and of the press can be effectively curtailed and even denied. This is plain enough when we consider that, if a small license fee or license tax may be lawfully imposed on the publication or circulation of printed matter, it may be increased to such a high degree (*Magnano Co.* v. *Hamilton,* 292 U. S. 40, 78 L. ed. 1109, and cases cited) that publication or circulation would be effectively prohibited. The framers of the

first amendment to the United States constitution were familiar with the long struggle of the press in England to be rid of the license taxes and the stamp taxes imposed by the government to curtail and limit the freedom of the press, and the first amendment prohibits any form of restraint on the publication or circulation of printed matter.

In *Near* v. *Minnesota, supra,* the United States Supreme Court held that the object of the constitutional provision was to prevent previous restraint on publications. The first amendment, however, relates to distribution as well as to publication. Liberty of circulating is as essential to the freedom of the press as liberty of publishing. Without circulation the publication would be of little value. (*Ex parte Jackson,* 96 U. S. 727, 24 L. ed. 877.) The license tax in the *Grosjean case* was held invalid because of its direct tendency to restrict circulation.

The freedom of speech and of the press, secured to the people by the first and fourteenth amendments to the United States constitution and by section 4 of article 2 of the constitution of the State of Illinois, are fundamental personal rights and liberties, and are essential to a free government by free men. The right to freely print and circulate applies not only to printed matter circulated without charge to the recipients, but it also applies when a charge is made for it. (*Grosjean* v. *American Press Co. supra; Lovell* v. *City of Griffin, supra.*) The historical discussions in the *Lovell* and *Grosjean cases,* and the reference therein to pamphlets and leaflets as the historical weapons used in defense of liberty, refer to literature which was for the most part not circulated *gratis* but was distributed to subscribers and sold, and the reason the freedom exists whether a charge is made for the literature or not is apparent, for otherwise the freedom of the press would be a right and privilege exclusive to those who could afford to publish and circulate printed matter without charge.

The city contends that in some of the cases cited the ordinance provided for censorship through licenses or permit and gave the certifying officer the power to reject or deny the application at his discretion on consideration of the moral character of the applicant or the nature of his project, whereas, the ordinance of the city of Blue Island did not provide for censorship but gave the applicant a right to a license on payment of the required fee. It can, however, make no difference whether the ordinance provides for censorship through licenses and permit or whether the ordinance merely provides a license fee or license tax on the privilege of publishing and circulating printed matter. In either event the effect is that there is an abridgement of the freedom of the press.

The publishers and distributors of newspapers, magazines, pamphlets, circulars, books or other printed matter are not immune from the ordinary forms of taxation for the support of the government, but they can not be compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution.

In *Village of South Holland* v. *Stein, supra,* the ordinance of the village of South Holland made it unlawful for anyone to go into a private residence for the purpose of soliciting or to canvass for orders for goods, wares, merchandise or services, of any description, or to solicit for the purpose of offering to furnish goods, wares, merchandise or services, to induce such orders, without obtaining a solicitor's permit from the village board. The defendant, a member of Jehovah's Witnesses sect, was arrested and convicted, under this ordinance, of selling subscriptions from house to house to a magazine entitled "The Watch Tower" and of giving a book and two pamphlets to each person who purchased a year's subscription. The judgment of the criminal court of Cook county was reversed on the ground that if the conviction was based on soliciting for subscrip-

tions without a permit, it was erroneous under *Emmons* v. *City of Lewistown,* 132 Ill. 380, which held that a city has no authority under the statute to require book canvassers, who solicit subscriptions for books for future delivery, to obtain a license, because such canvassers are neither hawkers nor peddlers. It was further held that if the conviction was based on giving or furnishing a book or pamphlet as disclosed by the stipulation, it violated both the State and Federal constitutions. The decisions of the United States Supreme Court in the *Lovell* and *Schneider cases* were reviewed, and it was pointed out that the constitution of Illinois is even more far-reaching than that of the constitution of the United States in providing that every person may speak freely, write or publish on all subjects, being responsible for the abuse of that liberty.

In *City of Chicago* v. *Rhine,* 363 Ill. 619, we upheld an ordinance of the city of Chicago which prohibited the sale of any article, daily newspapers excepted, on any street in the congested loop and Wilson avenue districts. Rhine was engaged in the business of selling magazines in the loop district, and was convicted under the ordinance. The case comes clearly within the exceptions pointed out in *Schneider* v. *Town of Irvington,* quoted above.

It is contended by the city that this is a regulatory ordinance. A municipality may enact regulations in the interest of public safety, health, welfare or convenience, within the limits permitted by law, but in every case this power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the freedom protected by the United States constitution and by the constitution of the State of Illinois. *Cantwell* v. *Connecticut, supra; Schneider* v. *Town of Irvington, supra.*

The ordinance is not regulatory. As applied to the facts in this case, the ordinance makes no provision regulating the manner of carrying on the business of peddlers in the city of Blue Island. The defendant's right to a

license on the payment of the required fee or tax was absolute. If the defendant paid the $25 for a year, or $4 for a day and so obtained the license she would then have been free to peddle the magazines in the city of Blue Island during the paid license period at any time, in any place and in any manner, wholly unrestricted by any provision in the ordinance. Her freedom to peddle the magazines would then be as complete as though the ordinance did not exist. The ordinance is purely a fee or tax measure, and under the circumstances in this case its effect is to compel the defendant to pay a fee or tax of $25 per year or $4 per day to exercise a privilege freely guaranteed to her by the constitution of the United States as well as by the constitution of this State. That this ordinance as applied to the facts in this case would operate as a restraint upon the circulation of the magazines in question is self-evident. If the defendant should be unable to pay the required fee or tax, circulation and distribution on the streets of Blue Island was prohibited and denied. *Grosjean* v. *American Press Co. supra.*

We hold that this ordinance as applied to the defendant under the circumstances and facts shown by the stipulation in this case is unconstitutional, because when so applied it abridges the freedom of the press secured to the defendant by the first and fourteenth amendments to the United States constitution and by section 4 of article 2 of the constitution of the State of Illinois. The fact that when so applied the ordinance is unconstitutional does not determine that it would be invalid for that reason when applied to other and different facts. *Whitney* v. *California,* 274 U. S. 357, 71 L. ed. 1095; *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 66 L. ed. 239.

The judgment of the criminal court of Cook county is reversed.

*Judgment reversed.*