**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., a charitable organization, Individually and in behalf of the Members thereof, et al., Plaintiffs,**

**v.**

**James B. CONLISK, Superintendent of the Department of Police of the City of Chicago, individually and in his official capacity as Chief of Police, et al., Defendants.**

**No. 73 C 73.**

United States District Court,
N. D. Illinois, E. D.

Dec. 28, 1973.

**1012**

Sybille C. Fritzsche, Burton Joseph, American Civil Liberties Union, Chicago, Ill., for plaintiffs.

Richard F. Friedman, Corp. Counsel of City of Chicago, Chicago, Ill., for Richard Curry.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiffs, International Society for Krishna Consciousness, Inc. (Krishna), William Bowes, Robert H. Lindberg and Chris Allen, have brought this action for injunctive and declaratory relief alleging the deprivation of their constitutional rights under color of state law in contravention of 42 U.S.C. § 1983. They invoke the jurisdiction of this court under 28 U.S.C. §§ 1343, 2201 and 2202. Defendants have moved to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. Should the court find it has jurisdiction and that a claim has been stated, the parties have stipulated to certain uncontested facts and have submitted briefs on the question of the constitutionality of certain ordinances of the City of Chicago as they have been applied to plaintiffs' activities.[1] For the reasons set out below, defendants' motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim will be denied, four of the challenged ordinances will be declared unconstitutional as applied, and the resolution of the issue of the constitutional applicability of the remaining two ordinances will be deferred to the state courts.

I

The International Society for Krishna Consciousness, Inc. (Krishna) is an international religious society, espousing the religious and missionary views of Krishna Consciousness. It is duly organized as a not-for-profit religious corporation under the laws of the State of New York and maintains a local center in Evanston, Illinois. The Krishna organization imposes on its members the duty to perform a religious ritual known as Sankirtan, which consists of religious chants, dancing, playing of sacred instruments, shuffling to the beat of the chanting, and soliciting and accepting donations and contributions while disseminating religious literature, all on public ways and in public places. The parties have stipulated to the religious nature of these activities, which are a part of Krishna's effort to spread its beliefs, attract new members and support its activities. Krishna's members wear distinctive garments and hairstyles. Their conduct, appearance and manner is unconventional.

The complaint alleges that, while engaged in the practice of Sankirtan on the public streets of Chicago, many of the society's members have been subjected to unlawful and unconstitutional actions by defendants and their agents, all policemen or other officials of the City of Chicago. These actions, it is alleged, evidence a pattern of harassment which has resulted in preventing plaintiffs from exercising their constitutionally protected First Amendment rights to freedom of religion, association, assembly and expression; and, under the Fourth Amendment, to be free from arrests and searches made without probable cause. They contend that they are now suffering and will continue to suffer irreparable injury and that they have no adequate remedy at law to redress these deprivations of their constitutional rights.

---

1. In the original complaint, plaintiffs had challenged certain ordinances both on their face and as applied. The challenge to the facial validity of the ordinances has subsequently been dropped.

They seek an injunction against further proceedings in state court criminal prosecutions which are currently pending against members of the organization, a declaration that the six challenged ordinances under which these prosecutions have been brought are unconstitutional as applied to plaintiffs' conduct, an order expunging all police records made on plaintiffs and an award of damages in the amount of $25,000.

## II

■ Defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter is unfounded. This court has jurisdiction over actions brought under § 1983 of the Civil Rights Act by virtue of 28 U.S.C. § 1343. And, in light of the Supreme Court's decision in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), which held that § 1983 was one of the "expressly authorized" exceptions to the anti-injunction statute, 28 U.S.C. § 2283, the pendency of criminal proceedings in state court cannot be raised as a bar to the existence of federal jurisdiction.

■ The real issue is whether the court should decline to exercise that jurisdiction in light of the historic policy of refusing to interfere with pending criminal proceedings absent extraordinary circumstances. Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). Defendants contend we must abstain, arguing that the complaint falls short of the standards set forth in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), where the Supreme Court delineated the types of extraordinary situations which warrant federal injunctive and declaratory relief. We disagree, finding that the stipulation of uncontested facts and the allegations of the complaint are sufficient to warrant our intervention into most of the criminal prosecutions pending against plaintiffs.

The standard set out in the Younger v. Harris sextet of cases declares abstention to be proper unless there is a showing: 1) that there is irreparable injury both "great and immediate," 401 U.S. at 46; 2) that the state law being challenged is "flagrantly and patently violative of express constitutional prohibitions" on its face, 401 U.S. at 53; or 3) that there is and has been "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." 401 U.S. at 82. In the companion case of Perez v. Ledesma, 401 U. S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), the Court elaborated on the requisites of the third ground, which is particularly appropriate here, explaining that situations involving "prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction" would justify federal injunctive relief. The facts of this case fall well within this standard.

Because of the concededly religious character of many of the activities for which plaintiffs have been arrested, the prosecutions being pursued under four of the six challenged ordinances cannot, in good faith, have been brought with any hope of obtaining valid convictions.[2] There are longstanding and unambiguous principles of constitutional law which preclude the applicability of these ordinances to plaintiffs' actions. Yet, a full twenty-five of the twenty-seven prosecutions currently pending in the Circuit Court of Cook County charge violations under these four ordinances. They involve arrests made on ten separate occasions against eighteen different individual members of the local Krishna chapter.[3] (At the height of its member-

---

2. A full discussion of the constitutional inapplicability of these ordinances is contained below, in the section discussing the merits of plaintiffs' challenge. We must note this finding here, however, because it is integral- ly related to the comity considerations dictated by *Younger*, et al.

3. We emphasize that the finding of bad faith here is based on the *prosecutions* under

ship this chapter only had a total number of 35). Particular individual members have been arrested on as many as four separate occasions, and the majority of arrests involve charges brought under two or more ordinances. In light of the number and pattern of prosecutions brought under these constitutionally inapplicable ordinances, we are unable to avoid a finding of bad faith and harassment. Defendants' protestations that there have been relatively few arrests when one considers the amount of time members of the plaintiff society have been present on Chicago streets misses the point entirely. Since plaintiffs had a *right* to be on Chicago streets, engaged in the activities they were pursuing without fear of arrest under these four ordinances, the prosecutions brought are far too numerous to be dismissed as innocent, casual or insignificant.

We also find that these facts refute defendants' contention that the as-yet unproved allegations of the complaint regarding other forms of harassment are without any underlying basis of support. Plaintiffs claim they have been subjected to numerous verbal threats of arrest, commands to cease the lawful and orderly practice of their religion, and the forfeiture of their religious instruments. They also allege they have been the victims of invidiously selective enforcement. As a result of being faced with these actual and threatened arrests and other forms of harassment, plaintiffs contend they have been forced to curtail their activities and that, as a result, the recruitment of new adherents and the level of donations have fallen off substantially. Finally, given the multiplicity of actions, individuals and charges involved in the pending state court actions, they are burdened with signifi-

cantly more than the mere "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution." *Younger,* 401 U.S. at 46.

In light of all these factors, we find the exercise of jurisdiction appropriate in this case, and will proceed with a consideration of the merits of plaintiffs' challenge to six of the municipal ordinances which they are charged with having violated.

### III

While the ordinances will be dealt with separately, it is important to set out the framework against which their applicability is to be judged. The court must determine: 1) the nature of plaintiffs' activities; 2) whether they fall within the protections of the First Amendment; and 3) what restrictions the city may legitimately impose on the exercise of those activities.

As stated above, defendants have stipulated to the religious character of the Krishna ritual of Sankirtan. This ritual includes: religious chants, dancing, the playing of sacred instruments, shuffling to the beat of the chanting, and soliciting and accepting donations and contributions while disseminating religious literature, all on the public ways and in public places. The parties do not agree, however, as to the behavior of certain individual plaintiffs, beyond these stated activities, on specific occasions while on the streets proselytizing for their religious beliefs. This dispute over certain facts is irrelevant to the determination of the applicability of four of the challenged ordinances as both parties concede that the stipulation is sufficient to decide whether or not the religious nature of plaintiffs' activities exempts them from the application of these ordi-

---

these ordinances, not the arrests themselves. We are mindful of the latitude to be accorded police officers in determining the constitutional applicability of existing and presumptively valid ordinances, and find that the issue of their good faith in making these arrests is an issue of fact not resolvable at this point in the proceedings. The prosecu-

tions present a different question, however, as prosecutors are charged with a higher standard of knowledge of constitutional law. It would be an insult to the intelligence of that office and the courts to conclude that they were not aware of the determinative constitutional principles involved in these cases.

nances. However, the factual dispute will prevent any determination at this point as to the applicability of the remaining two ordinances.

■ For over thirty years it has been well-settled that all of the concededly religious activities engaged in by plaintiffs here come within the Constitutional protections of the First Amendment. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1942). The *Cantwell* Court took care to emphasize that the First Amendment embraced not only the freedom to believe, but the freedom to act on behalf of one's beliefs as well. 310 U.S. at 303. However, the Court also pointed out that while the right to believe is absolute, the right of action may be subject to reasonable and non-discriminatory regulation designed to safeguard the competing rights of others. The Court has consistently taken the position that:

> [W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

Nevertheless, because of the paramount position of First Amendment freedoms, the Court has been intolerant of overzealousness on the part of the state in protecting other interests when the effect is to infringe unduly upon the exercise of protected activities. The applicability of an ordinance which incidentally affects First Amendment rights may be upheld only:

> [I]f it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *O'Brien,*

391 U.S. at 377. Schneider v. Levinson, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1935). See Jamison v. State of Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943).

Plaintiffs here contend that the concededly religious nature of certain of their activities exempts them from the application of four of the ordinances altogether, either because those ordinances totally prohibit the exercise of their First Amendment rights, or because the "incidental" effect on those rights is greater than necessary or permissible under the above standards. Defendants, on the other hand, argue that the challenged ordinances involve only reasonable regulations of time, place and manner and therefore are constitutionally applicable even to plaintiffs' religious activities.

## IV

■ The first ordinance in question is § 160–3 of the Chicago Municipal Code which makes it unlawful, "for any person to engage in the business of a peddler without a license." The constitutional inapplicability of this type of ordinance to religious activities has been a closed question for decades. In Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1942), the Supreme Court held that a member of the religious group known as Jehovah's Witnesses could not be subjected to a city ordinance requiring the purchase of a permit in order to conduct door-to-door solicitations and sales of religious literature. The Court pointed out that:

> [T]he mere fact the religious literature is 'sold' . . . rather than 'donated' does not transform evangelism into a commercial enterprise. . . . It is plain that a religious organization needs funds to remain a going concern. But an itinerant evangelist however misguided or intolerant he may be, does not become a mere book agent by selling the Bible or religious tracts to help defray his expenses or to sustain him. Freedom of speech, freedom of the press, free-

dom of religion are available to all, not merely to those who can pay their own way. 319 U.S. at 111.

The effect of the license fee was to unconstitutionally infringe protected First Amendment rights since it amounted to a tax on the exercise of those rights, not justified by any legitimate state interest being served.

One of the authorities cited and relied on by the Court in *Murdock* was the Illinois Supreme Court case of City of Blue Island v. Kozul, 379 Ill. 511, 41 N.E.2d 515 (1942). *Kozul* involved an ordinance substantially identical to the one before us here, requiring anyone who sold anything on the public way to purchase a peddler's permit. The Court reversed a conviction under this ordinance against a member of Jehovah's Witnesses for selling religious tracts without a permit, finding that a person could "not be compelled to purchase, through a license fee or a license tax, the privilege freely granted by the constitution." 41 N.E.2d at 519. Since the ordinance in no way regulated the *conduct* of peddling, the Court found no valid state interest being served which would justify the inhibitions the ordinance imposed on First Amendment rights.

The peddling ordinance challenged here must be found inapplicable to plaintiffs' sales of religious literature for the identical reasons. As in *Murdock* and *Kozul,* the licensing fee is purely a taxing measure. Once a person obtains a permit, the ordinance does not restrict in any way the time, place or manner in which solicitations or sales may be made. Since defendants do not, and cannot, assert any valid state interest being served by this ordinance, it may not, as a matter of constitutional law, be applied to plaintiffs' activities.

 The next two ordinances challenged by plaintiffs govern the public solicitation of funds and donations and may be treated together. Section 193–1(f) of the Chicago Municipal Code prohibits all "begging or soliciting of funds on the public ways," except in compli-

ance with the so-called tag-day ordinances, § 36–11 through § 36–18. Section 36–13 of that ordinance limits solicitations by charitable organizations to one day per year, that day being designated by the city council, and all other solicitations, charitable or otherwise, are prohibited. Before one can participate in tag-day solicitations, an organization must make application to the city council stating that it is engaged in charitable work, "which, in the opinion of . . . [the standing committee] . . . of the city council, shall be commensurate with the funds received and distributed by it." § 36–14.

Plaintiffs argue at the outset that since they are not engaged in charitable work, they would not be eligible to participate in tag-day solicitations, and that they are therefore prohibited from ever engaging in solicitations on the public way. Defendants contend that the proper construction of the term "charitable purposes" includes religious activities and would therefore allow for the participation of plaintiff organization. We find that it makes no difference which way the ordinance is construed as either way its application to plaintiffs' activities is unconstitutional. If the ordinances are construed to deny plaintiffs' eligibility, they prohibit plaintiffs from *ever* soliciting funds on the public way. And, even if they do qualify for participation, they would only be allowed to solicit on one day per year.

*Murdock* and *Cantwell* make clear that the solicitation of funds on behalf of a religious cause is a · protected First Amendment right. As such, the city has a heavy burden to prove the necessity for such a massive infringement as is imposed by these ordinances on the exercise of that right. The justifications asserted here fall far short of satisfying the standards set out in *O'Brien* above.

Defendants contend that these ordinances serve two vital governmental interests: 1) the protection of the public from "constant importuning by persons not willing to find constructive employment or on behalf of fraudulent or

noneleemosynary causes," (Defendants' brief, p. 9); and 2) protecting "the right of all persons to walk upon the streets freely and unmolested." (Brief, p. 12)

There is no question as to the legitimacy of these significant state interests. These ordinances, however, do nothing to further those interests except by the most strained construction and overbroad effect. Like the peddling ordinances, neither of these provisions in any way regulates the behavior of persons authorized to solicit. Thus, the only way in which they can be construed as serving the interest of protecting passersby in their right to unhindered travel is because they limit the possibility of being approached by plaintiffs to one day per year. If, on that one day, authorized solicitors accost, assault or otherwise molest passersby, or obstruct traffic, there is no provision under either of these ordinances by which they could be arrested or prosecuted. Clearly, these ordinances were not designed or intended to serve this particular state interest, and thus fail to meet even the first of the *O'Brien* requirements, *supra* at 1015. Overstepping the bounds of permissible behavior while engaged in the otherwise protected activities of proselytizing or soliciting is instead governed, appropriately we think, by certain of the disorderly conduct ordinances, discussed later herein.

As for the protection of citizens from fraud, the ordinances must fail for another reason. In this regard, the registration provisions of the ordinance, contained in § 36–14, meet the first two requirements of *O'Brien*, but are in blatant disregard of the third: that the restriction on First Amendment freedoms be "no greater than is essential" for the furtherance of the legitimate state interest. As far back as *Cantwell*, the Supreme Court recognized methods of serving this interest fully without imposing any significant restraints on the exercise of First Amendment activities, i. e.,

. . . by requiring a stranger in the community before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. 310 U.S. at 306.

And in *Murdock*, the Court took care to distinguish between the type of ordinance it found impermissibly applied to Jehovah's Witnesses, and a registration ordinance for "colporteurs and other solicitors" which might well survive a constitutional challenge. 319 U.S. at 110. Here, the tag-day ordinance not only requires registration, but then limits solicitation to one day per year, even after a religious group has established its bona fides. Since the asserted interest of protection from fraud could clearly be satisfied by the registration provisions, the one-day-per-year provision amounts to an arbitrary infringement on the exercise of First Amendment rights. Consequently, whatever validity these ordinances may have with regard to persons or groups not engaged in the exercise of protected rights, they may not, as a matter of constitutional law, be applied to plaintiffs' concededly religious solicitations here.

## VI

The fourth ordinance challenged by plaintiffs, § 36–33, has two sections. The first, which is relevant here, states:

No person shall engage in any game, sport, amusement, performance or exhibition, or exhibit any machine or show any animal, or indulge in any acrobatic or gymnastic feats, on any public way in the city, except as provided in . . . [two sections not relevant here].

This ordinance is constitutionally inapplicable to plaintiffs' activities for essentially the same reasons as the three already discussed. Once again, we reiterate that plaintiffs' chants, dancing and playing of sacred instruments, are stipulated to be a part of the religious ritual of Sankirtan. This ordinance

would appear to prohibit those activities altogether, notwithstanding their status as a protected exercise of First Amendment rights. Defendants once again assert the governmental interest of preventing obstructions to the free flow of pedestrian and vehicular traffic. But this section of the ordinance says nothing whatsoever about the attraction of crowds, or the causing of any kind of a public nuisance, but simply prohibits the activity regardless of its intent or effect.[4] Certainly, the city may not remove the constitutional protection afforded plaintiffs' religious activities simply by labelling it public entertainment, which, incidentally, it clearly is not. Consequently, since there is no valid governmental interest being served by the ordinance, its arbitrary infringement of First Amendment freedoms is constitutionally impermissible.

## VII

■ The remaining two ordinances challenged by plaintiffs raise different issues. Sections 193–1(a) and 193–1(d) provide:

A person commits disorderly conduct when he knowingly:

(a) Does any act in such unreasonable manner as to provoke make or aid in making a breach of peace; or

(d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm; . . . .

Unlike the four ordinances discussed above, we cannot find, as a matter of

constitutional law, that, regardless of plaintiffs' behavior in a particular situation, they would be immune from prosecution under these ordinances because of the protections afforded the exercise of their First Amendment rights.

These ordinances are specifically directed to and affect only the *manner* in which one may exercise a First Amendment right, or engage in a First Amendment activity. They are not challenged as being facially invalid, and they certainly serve the legitimate state interests of maintaining peace and order along the public way. Thus, a determination of whether or not they were constitutionally applied against plaintiffs here requires a factual hearing on the circumstances of each particular case. Only such a hearing can resolve whether or not a particular plaintiff's conduct was "merely annoying," and is therefore not punishable, or whether it constituted a serious breach of the peace, for which the plaintiff must be responsible regardless of the religious character of his activities. Since the cases are already pending in the state court, we think that is the appropriate place to resolve these questions of constitutional applicability, and we will defer to that court's rulings.

In sum, having determined that the exercise of our jurisdiction is appropriate in this case, we find that four of challenged ordinances may not, as a matter of law, be constitutionally applied to the activities in which plaintiffs were engaged, regardless of the circumstances of any particular case. These four ordinances are §§ 160–3, 33–13, 194–1(f) and 36–33 of the Chicago Municipal Code. Defendant Curry will be enjoined from proceeding with all prosecutions currently pending in the Municipal Court of Cook County charging plaintiffs with violations of these ordinances.

---

4. The second section of the ordinance prohibits displays, shows or performances in store windows and on private premises which abut the public way, which are intended to, or in fact, attract a crowd which interferes with the passage of the public. Since there has been no assertion that plaintiffs were ever

engaged in the practice of Sankirtan on private premises, we must assume they are being prosecuted only under the first section of the ordinance, dealing with performances on public rather than private property, and which makes no distinctions at all as to the effect of such performances.

Two of the challenged ordinances, however, §§ 193–1(a) and 193–1(d), could be applied to plaintiffs' behavior in a constitutionally acceptable manner, depending on the circumstances of each case. Consequently, the prosecutions currently pending which charge violations of these two ordinances will not be enjoined as we will defer consideration of their applicability to the state court. An appropriate order will enter.