CHICAGO TRIBUNE COMPANY, Plaintiff-Appellee, v. THE VILLAGE OF DOWNERS GROVE *et al.*, Defendants-Appellants.

Second District   No. 2—85—1049

Opinion filed May 12, 1987.

Barbara J. Gosselar, Village Attorney, of Downers Grove, for appellants.

Mindy S. Trossman, James A. Klenk, and Mark S. Sableman, all of Isham, Lincoln & Beale, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendant, the village of Downers Grove, appeals from a summary judgment entered in favor of plaintiff, Chicago Tribune Company, in a declaratory judgment action which determined that the village's door-to-door commercial solicitation ordinance violated the Federal and State constitutional guarantees of freedom of speech, press, due process, and equal protection of the law as applied to the conduct of the Tribune when it solicited newspaper subscriptions in the village.

This action was commenced by the Tribune after police officers of the village advised Tribune employees, who were conducting door-to-door sales of subscriptions to the newspaper in the village, that a commercial solicitation permit was required for them to do so. The salesmen were also advised that the ordinance prohibited any solicitation activity at premises which were posted with "No Solicitation" signs. In granting the Tribune's motion for summary judgment, the trial court found that the door-to-door newspaper subscription solicitation in the village was an exercise by the Tribune of its constitutionally protected free speech and free press rights which may not be regulated by the village as commercial solicitation and was coequal with the free speech, press, and religious rights of political, charitable, and religious organizations whose door-to-door solicitation of funds is deemed noncommercial by other provisions of the village ordinance. The trial court permanently enjoined the village and its employees from subjecting the Tribune to the commercial solicitation regulations of its ordinance, and the village appeals.

No evidence was considered by the trial court relating to the specific commercial or noncommercial restrictive regulations of the solicitation ordinance. As we understand the terms of the order for permanent injunction from which this appeal is taken, the court found, as a matter of law, that any restrictions regulating door-to-door solicitation may not be constitutionally applied to the Tribune differently than they are applied to a political, charitable, or religious organization. The injunction thus extended only to the ordinance as it pertains to the regulation of commercial solicitation activity, as defined therein, and does not prohibit application of the noncommercial regulations to the Tribune.

As the trial court did not consider the constitutionality of the specific regulatory terms of the ordinance, we may not here consider the reasonableness of those provisions (see *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343; *Breard v. Alexandria* (1951), 341 U.S. 622, 95

L. Ed. 1233, 71 S. Ct. 920; *Osborn v. Village of River Forest* (1961), 21 Ill. 2d 246, 171 N.E.2d 579) and will address the equal protection issue upon which the trial court premised its judgment.

The village contends that the Tribune's door-to-door solicitation for newspaper subscriptions is a commercial activity which may be constitutionally regulated more restrictively than may noncommercial activity. It argues that the trial court failed to properly distinguish between the Tribune's clear right to freely print and circulate its newspaper and the marketing of it through door-to-door solicitations for the sale of subscriptions.

The Tribune contends that its door-to-door subscription sales activity is an exercise of its constitutional right to sell and circulate newspapers and cannot be made subject to the village ordinance regulating commercial solicitation or to any greater restrictions than is similar activity by political, charitable, or religious organizations.

The Downers Grove Municipal Code, as amended by an ordinance adopted September 10, 1984, by its terms sought to give protection from the conduct of solicitors who may "harass, annoy, disturb and defraud residents of the Village." In its preamble, the ordinance noted courts have acknowledged there was a legitimate governmental concern in preventing fraud, crime, undue annoyance and harassment, and preservation of privacy and have given strong first amendment protection to noncommercial solicitation, such as by religious, charitable, and political organizations, and lesser protection to commercial solicitation. Section 15-29 of the solicitation ordinance provides:

> "*Commercial solicitation* shall mean the going upon any premises or to or in one or more private residences by any person without appointment by personal contact with the resident or occupant for the purpose of soliciting orders for the sale for profit of goods, books, magazines, or any other article or thing whatsoever, or for any service, or for the purpose of peddling or hawking any of the same, or for the purpose of making or requesting appointments or procuring interviews or arranging for demonstrations or explanations preliminary to any actual solicitation of orders, selling, peddling or hawking of any of the same."

The ordinance further provides that one who wishes to engage in commercial solicitation within the village must obtain a permit from the village. Application forms are provided for listing the names and addresses of the applicant, the persons who will solicit, and their supervisor. Other information required includes the nature and purpose of the commercial solicitation, dates upon which it will be undertaken,

and whether any of the solicitors have ever been convicted of violating an Illinois municipal ordinance regulating commercial solicitation or of a felony under any State or Federal law within five years of the date of the application. No more than 15 commercial solicitation permits may be outstanding in the village at one time; issuance of a permit will be denied to persons previously convicted of violating similar ordinances or felony statutes; and a permit may be suspended or revoked for failing to truthfully complete the application. All door-to-door commercial solicitations are limited to the period from 9 a.m. to 6 p.m. on Mondays through Saturdays and are prohibited on Sundays and State or Federal holidays.

While we are not directly concerned in this case with those portions of the ordinance regulating noncommercial solicitation, as the village was enjoined only from subjecting the Tribune to the commercial solicitation provisions, a comparison helps to illuminate the question before us. Section 15-39 of the solicitation ordinance provides:

> "*Noncommercial solicitation* shall mean the going upon any premises or to or in one or more private residences by any person without appointment by personal contact with the resident or occupant for the purpose of requesting directly, or indirectly, money, credit, property, financial assistance, or other thing of value on the plea or representation that such money, credit, property, financial assistance, or other thing of value will be used for a noncommercial purpose, such as a political, charitable, or religious purpose. Noncommercial solicitation shall not include canvassing or calling from house to house only for the purpose of communicating issues of general interest to the public."

No permits are required for noncommercial solicitation; however, those wishing to do so must register with a village officer for purposes of identification. After filling out a form giving the name and address of the applicant and the persons who will be soliciting, the nature and purpose of it, and dates when it will be undertaken, a certificate of registration will be issued. It, too, may be denied for an untruthful application and may be suspended or revoked for violations of the ordinance. Noncommercial solicitation may be conducted from 9 a.m. to 8 p.m. on any day.

Both the commercial and noncommercial provisions of the solicitation ordinance require that a solicitor leave the premises when asked to do so by the owner or occupant and, also, that a solicitor must honor "no soliciting" notices which may be posted on any premise. There is no fee charged or cost to either a commercial solicitor for a

permit or a noncommercial solicitor for a certificate of registration.

Both parties agree that the printing, circulation, and distribution of a newspaper is protected by the first and fourteenth amendments to the United States Constitution and by section 4 of article 1 of the Constitution of Illinois (*Lovell v. City of Griffin* (1938), 303 U.S. 444, 452, 82 L. Ed. 949, 954, 58 S. Ct. 666, 669; see *City of Blue Island v. Kozul* (1942), 379 Ill. 511, 521, 41 N.E.2d 515), but they fail to agree as to the scope of such protections. The Tribune asserts it is fully protected, not only in its freedom to publish newspapers, but to sell and circulate them as it wishes without being subjected to the restrictions of the Downer's Grove commercial solicitation ordinance. The village agrees with the Tribune's right to print and circulate its newspaper, but argues that the door-to-door subscription sales activity of the Tribune is solely commercial in nature and is thus subject to the more stringent municipal regulations imposed by the commercial solicitation provisions of the ordinance in question rather than those imposed by the provisions regulating noncommercial activity.

That there is a distinction in the degree of first amendment protection afforded commercial and noncommercial speech was first recognized by the Supreme Court in *Breard v. Alexandria* (1951), 341 U.S. 622, 95 L. Ed. 1233, 71 S. Ct. 920, in which the court upheld a city ordinance which prohibited unsolicited door-to-door magazine subscription sales as not in violation of the freedom of speech or press. The court noted that sales activity of that type was commercial in nature and found it to be subject to regulation under the facts of that case. In doing so, the court balanced the right to privacy of the residents of the municipality against the wishes of the magazine publisher to sell and distribute his product by that particular means, concluding:

> "It would be *** a misuse of the great guarantees of free speech and free press to use those guarantees to force a community to admit the solicitors of publications to the home premises of its residents." (341 U.S. 622, 645, 95 L. Ed. 1233, 1249, 71 S. Ct. 920, 935.)

Although the Supreme Court recognized in *Breard* that the commercial speech there considered did not have the same status as pure free speech under the first amendment, it did not articulate a general standard for the extent of first amendment protection to be given to commercial speech. (341 U.S. 622, 642-43, 95 L. Ed. 1233, 1248, 71 S. Ct. 920, 932-33.) Subsequently, in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817, the court rejected arguments that commercial speech, as such, was outside all protections of the first

amendment, finding that while the advertising of prescription drug prices was commercial, the statute seeking to bar such advertising did not meet constitutional standards. The court noted, however, that some forms of commercial speech regulation would be permissible. 425 U.S. 748, 770-71, 48 L. Ed. 2d 346, 363-64, 96 S. Ct. 1817, 1830.

In a recent case in which the Supreme Court considered door-to-door solicitation, it held that a municipal ordinance prohibiting the solicitation of contributions by a charitable organization was unconstitutional. (*Village of Schaumburg v. Citizens For a Better Environment* (1980), 444 U.S. 620, 639, 63 L. Ed. 2d 73, 89, 100 S. Ct. 826, 837.) In so holding, the court drew a distinction between charitable solicitations, which sought financial support for the espousal of a particular belief, and commercial solicitations, such as were addressed in *Breard* and *Virginia*, stating:

> "Prior authorities, therefore, clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech." (444 U.S. 620, 632, 63 L. Ed. 2d 73, 84-85, 100 S. Ct. 826, 833-34.)

Similarly, it has been recognized that door-to-door solicitations by political and religious organizations are accorded strict first amendment protection. See *Heffron v. International Society for Krishna Consciousness, Inc.* (1981), 452 U.S. 640, 647-48, 69 L. Ed. 2d 298, 306-07, 101 S. Ct. 2559, 2563-64; *Hynes v. Mayor and Council* (1976), 425 U.S. 610, 48 L. Ed. 2d 243, 96 S. Ct. 1755; *City of Watseka v. Illinois Public Action Council* (7th Cir. 1986), 796 F.2d 1547, 1550, *aff'd* (1987), 479 U.S. ____, 93 L. Ed. 2d 972, 107 S. Ct. 919.

We consider in this case whether the Downers Grove solicitation ordinance, as applied to the Tribune's newspaper subscription activities, creates an unreasonable classification in violation of the equal protection provisions of the Federal and Illinois constitutions. In *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477-78, 468 N.E.2d 1162, the court stated:

> "The fourteenth amendment to the Federal Constitution requires equality between groups of persons 'similarly situated.' It does not deny a State the power to treat different classes of persons differently. (*Eisenstadt v. Baird* (1972) 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1034-35; *People v. Mathey* (1983), 99 Ill. 2d 292, 296; *People v. Bradley* (1980), 79 Ill. 2d 410, 416.) In fact, in the absence of a fundamental right or suspect classification, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. (*Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312-13, 49 L. Ed. 2d 520, 524, 96 S. Ct. 2562, 2566-67; *People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 204; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578.) This is the traditional equal protection analysis that has been used by this court in assessing both Federal and State equal protection challenges. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 121; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70,76.) Under this analysis, ' "[a] classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " ' *Eisenstadt v. Baird* (1972), 405 U.S. 438, 447, 31 L. Ed. 2d 349, 359, 92 S. Ct. 1029, 1035, citing *F.S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 64 L. Ed. 989, 990, 40 S. Ct. 560, 561-62."

The Tribune argues that it is denied equal protection of the laws if the village is permitted to enforce the more restrictive commercial restrictions of its solicitation ordinance against the newspaper sales activity while enforcing only the less restrictive noncommercial regulations against similar door-to-door activity by charitable, religious, and political organizations. The Tribune asserts that its conduct in selling subscriptions would have no more or less effect upon the community than the sale of the *Daily Worker, Muhamad Speaks,* or the *Watch Tower,* with which its freedom of speech and press is coextensive. The village responds that strict first amendment protection does

not apply to this purely commercial aspect of the Tribune's business of publishing and circulating newspapers, and this activity may be thus classified and regulated differently than solicitations by the other types of organizations.

We consider the village's application of the ordinance in this instance has been drawn on too fine a line. We cannot say that the Tribune's right to freedom of speech and the press is any less than that of the other organizations against which the commercial solicitation restrictions are not applied. While it is true that the Tribune is a commercial business, it is also a newspaper and thus secured by the first amendment in its right to sell and circulate its product on the same basis as are the other protected entities. See *City of Blue Island v. Kozul* (1942), 379 Ill. 511, 41 N.E.2d 515.

First amendment rights, of course, are not absolute and are subject to reasonable time, place, and manner restrictions on the exercise of those rights. (*People v. Tosch* (1986), 114 Ill. 2d 474, 480, 502 N.E.2d 1253.) As earlier noted, we have not here considered the specific regulations of the solicitation ordinance as the trial court did not do so in resolving this matter on equal protection grounds. As we have determined the circuit court's judgment was correct, it will be affirmed and the cause remanded for further proceedings.

Judgment affirmed, cause remanded.

LINDBERG, P.J., and HOPF, J., concur.