(No. 65418.—

CHICAGO TRIBUNE COMPANY, Appellee, v. THE VILLAGE OF DOWNERS GROVE *et al.*, Appellants.

*Opinion filed December 15, 1988.*

STAMOS, J., took no part.

Barbara J. Gosselar, of Downers Grove, for appellants.

James A. Klenk and Roy B. Underhill, of Isham, Lincoln & Beale, and Joseph P. Thornton, all of Chicago, for appellee.

Thomas W. Kelty and John M. Myers, of Pfeifer & Kelty, P.C., and Gregory A. Crouse, all of Springfield,

for *amicus curiae* Illinois Municipal League.

JUSTICE RYAN delivered the opinion of the court:

In an action seeking injunctive relief instituted by the Chicago Tribune Company (Tribune), the circuit court of Du Page County entered a summary judgment and declared unconstitutional, as applied to the Tribune, the nonsolicitation ordinance of the Village of Downers Grove. The appellate court affirmed the circuit court. (155 Ill. App. 3d 265.) We granted leave to appeal under our Rule 315 (107 Ill. 2d R. 315).

The Village had passed an ordinance which regulated door-to-door solicitation of both a commercial and noncommercial nature. The ordinance required that all solicitors must honor individual householder's "No solicitation" notices. The ordinance further classified solicitation of funds for charitable, religious and political organizations under the noncommercial solicitation article of the ordinance. Solicitations for the sale "of goods, books, magazines, or any other article or thing whatsoever," however, were classified as commercial. The ordinance required all commercial solicitors to pay a fee for a permit before they could go door to door and limited the number of permits at any given time to 15. There was also a minimum five-day waiting period while a village official reviewed the permit application. It is not necessary to here detail the other limitations the ordinance placed on commercial solicitation.

Noncommercial solicitors were required merely to register with the Village for identification purposes only and to state the nature, purpose and date of their solicitation. A certificate was then immediately issued. The Village could revoke either permits or certificates for untruthfulness on the application. Commercial solicitation was permitted between 9 a.m. and 6 p.m., Monday through Saturday, while noncommercial solicitation was

allowed between 9 a.m. and 8 p.m. every day. The purpose of the ordinance was to prevent fraud, harassment, annoyance and disturbance to the Village residents.

The Tribune filed an action for injunctive relief and to have the ordinance declared unconstitutional, after its solicitors were stopped by the village police and advised that they must obtain permits for commercial solicitation before resuming their activities. The constitutionality of specific regulatory provisions of the ordinance as applied to newspapers was not decided by the trial or appellate courts.

The circuit court ruled first that the Tribune's solicitation is speech, which is protected under the constitutions of Illinois and the United States; second, that the Tribune's solicitation is an exercise of its free press and free speech rights, which are co-equal with the rights of "noncommercial" political, charitable and religious organizations; and third, that by requiring the Tribune to submit to restrictions applied to commercial solicitors, the Village violated the Tribune's free speech, equal protection and due process rights under the Illinois and United States Constitutions.

The appellate court affirmed the circuit court, using, as did the trial court, an equal protection analysis. (155 Ill. App. 3d 265.) It held that the Tribune's rights to freedom of speech and the press are not lesser rights than those guaranteed to the religious, political and charitable organizations considered noncommercial by the Village. The court noted that under the ordinance, religious and political organizations would not be prohibited from soliciting for the sale of their particular publications. The court held that although the Tribune is a business, it is also a newspaper and therefore constitutionally protected by the first amendment in its right to sell and circulate its product on the same basis as religious, political and charitable organizations.

The issue presented on appeal is whether the Village's ordinance violated the Tribune's free speech and equal protection rights under both the United States and Illinois Constitutions. (See U.S. Const., amends. I, XIV; Ill. Const. 1970, art. I, §§2, 4.) We agree with the trial court and appellate court that the ordinance in question infringes upon the Tribune's Federal constitutional rights. Because we affirm their decisions on Federal constitutional grounds, we find it unnecessary to determine whether this ordinance also offends the Illinois Constitution.

The Village first asserts that commercial speech is afforded lesser protection under the Federal Constitution than pure speech. (*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817.) The Village also contends that the Tribune's solicitors engaged in nothing more than commercial speech when they proposed a commercial transaction on the doorstep. Because of the commercial nature of this activity, the Village insists that it is entirely proper that the Tribune should be regulated like any other business attempting to sell its product. The Village contends that *Breard v. City of Alexandria* (1951), 341 U.S. 622, 95 L. Ed. 1233, 71 S. Ct. 920, controls this case. In *Breard*, the Supreme Court upheld an ordinance which imposed a blanket ban on any door-to-door solicitation. The appellant in that case was selling magazine subscriptions. When the Court considered the first amendment challenge to the ordinance, it stated that the sale of literature introduced a "commercial feature" into the process. While the Court acknowledged that the fact that literature is sold does not put it beyond the protections of the first amendment, it went on to declare that the constitutionality of the ordinance turned upon the balancing of the homeowner's privacy

against the publisher's choice of distribution methods and upheld the ordinance.

The Village further argues that political, charitable and religious organizations, which it classifies as engaging in noncommercial speech when they solicit funds, have historically been given more protection than commercial solicitors. The Village submits it is simply recognizing this historic difference in its ordinance. The Village relies on *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue* (1983), 460 U.S. 575, 75 L. Ed. 2d 295, 103 S. Ct. 1365, to show that the *Breard* rationale still has validity, despite the fact that in *Village of Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 63 L. Ed. 2d 73, 100 S. Ct. 826, the Court declared that *Breard* and other cases that indicate commercial speech is not protected no longer reflect modern first amendment principles. As we read the references to *Breard* in *Minneapolis Star & Tribune Co.*, which was a case invalidating taxation of paper and ink, *Breard* is cited for the proposition that the first amendment does not prohibit all regulation of the press, and that newspapers can be subject to general economic regulation. (*Minneapolis Star & Tribune Co.*, 460 U.S. at 581, 75 L. Ed. 2d at 302, 103 S. Ct. at 1369.) Later, in a footnote, *Breard* is cited only to *refute* the Minneapolis Star & Tribune Company's contention that even a generally applicable sales tax would be unconstitutional if applied to a newspaper. That same footnote declares that selling subscriptions to magazines door to door is an activity protected by the first amendment. (460 U.S. at 586 n.9, 75 L. Ed. 2d at 305 n.9, 103 S. Ct. at 1372 n.9.) Consequently, we do not agree that *Breard* controls the present case. The ordinance in *Breard* prevented all door-to-door solicitation and did not treat various groups differently. Thus, equal protec-

tion was not at issue in *Breard*, as it is in the case before us.

The Village contends that because the Tribune's solicitation involved the selling of a product (subscriptions to newspapers), the "sales pitch" of the solicitor is commercial speech, and the solicitor is therefore entitled to no greater protection than solicitors of brushes, cosmetics, or pots and pans. Thus, the Village argues, equal protection requires that solicitors for the sale of newspapers be treated the same as solicitors for the sale of other items.

The Tribune's equal protection argument posits that both the publication of religious, political and charitable groups and the publication of the Tribune are protected by the first amendment "freedom of press" provision. The Tribune asserts that since both solicitations are accomplished by commercial speech, it is a denial of equal protection to hold that some publications fall into one classification in the ordinance while the Tribune's publications fall under another.

We begin by first examining the first amendment concerns raised here. The United States Supreme Court has held that government bodies may permissibly impose restrictions on the time, place and manner of speech, if those regulations protect a substantial governmental interest unrelated to the suppression of free expression and are narrowly tailored, limiting the restrictions to those reasonably necessary to protect the substantial government interest. (*Brown v. Glines* (1980), 444 U.S. 348, 354, 62 L. Ed. 2d 540, 548, 100 S. Ct. 594, 599; *Village of Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 637, 63 L. Ed. 2d 73, 87-88, 100 S. Ct. 826, 836.) Applying this standard to the ordinance in this case and its effect on the Tribune's publishing-related solicitation leads us to conclude that the ordinance is invalid under the first amendment.

The Village's asserted interest is the protection of its residents from the harassment, disturbance and annoyance which may result from door-to-door solicitation. We do not dispute the legitimacy of this interest or the power of the Village to enact regulations to advance it. However, the instant regulation fails to comport with the other requirements of the "time, place and manner" test. In our view, the ordinance is neither reasonably related to its stated objective, nor as narrowly tailored as it could be.

Taking the latter point first, the ordinance's waiting-period provisions and the limit on the number of permits which may be issued at any one time are in the nature of prior restraints upon the Tribune's ability to circulate its publication. Clearly, there are less draconian means to protect residents from annoyance than by imposing these arbitrary restrictions. Downers Grove residents may post "no soliciting" signs, and the Village may vigorously enforce laws which already prohibit trespassing and fraud. See *Schaumburg*, 444 U.S. at 637-38, 63 L. Ed. 2d at 88, 100 S. Ct. at 836-37.

Moreover, even if the ordinance were to satisfy the "narrowly tailored" requirement, the "reasonable relationship" prong raises even deeper concerns. Again, the stated purpose of the ordinance is to protect Village residents from annoying solicitors. However, the ordinance strictly regulates only "commercial" solicitors, while imposing virtually no restrictions upon charitable, religious and political solicitation. There has been no showing (nor, we suspect, could there be) that these "noncommercial" solicitors *as a class* are less annoying or disturbing than their "commercial" counterparts. Thus, the statute draws a distinction which fails to advance its stated purpose.

The Village seeks to justify inclusion of the Tribune in the "commercial" category because the Tribune, un-

like the groups classified as "noncommercial," sells its publication for profit. The Village may be correct in that the profit factor makes the Tribune "commercial," but, as already stated, that fact does not justify a lesser degree of constitutional protection. This court stated long ago that the right to freely publish and write applies not only to printed matters circulated without charge, but it also applies to publications sold for profit. *City of Blue Island v. Kozul* (1942), 379 Ill. 511, 518.

Furthermore, the ordinance in question also violates the equal protection clause of the fourteenth amendment to the United States Constitution. The equal protection clause mandates that ordinances and statutes which affect first amendment interests be narrowly tailored when furthering governmental objectives. (*Police Department v. Mosley* (1972), 408 U.S. 92, 101, 33 L. Ed. 2d 212, 220, 92 S. Ct. 2286, 2293.) This narrow focus is necessary because first amendment rights are fundamental rights (*Cox v. Louisiana* (1965), 379 U.S. 559, 574, 13 L. Ed. 2d 487, 498, 85 S. Ct. 476, 485-86), and as such restrictions placed upon them are subject to strict scrutiny under the equal protection clause (*Regan v. Taxation with Representation of Washington* (1983), 461 U.S. 540, 547, 76 L. Ed. 2d 129, 137-38, 103 S. Ct. 1997, 2001-02). The burden on the government is a heavy one; it must establish that it has a compelling interest which justifies the law in question, and precisely draft that law to serve this interest. *Plyler v. Doe* (1982), 457 U.S. 202, 216-17, 72 L. Ed. 2d 786, 799, 102 S. Ct. 2382, 2394-95.

Applying this level of scrutiny to the Village's ordinance, it is clear that it is invalid. Although the Village does have an interest in protecting its citizens from harassment by canvassers and peddlers, the distinction it draws between newspaper salespersons and charitable solicitors does not reasonably further its stated objective.

We need not even consider whether the interest of the Village would be deemed "compelling" under equal protection analysis. Accordingly, we find that under both the equal protection clause and the first amendment of the United States Constitution, this ordinance is unconstitutional. For these reasons, we affirm the decision of the appellate court.

*Affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.